IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| **JOHN DOE, A Minor** | * | |
| **By his Parents, JAMES and JANE DOE** | | |
| Residents of Carroll County | * | |
| | | |
| **Plaintiff,** | * | **JURY TRIAL DEMANDED** |
| | | |
| **v.** | * | |
| | | |
| **IRVIN MUCHNICK** | * | Case No. _____ |
| 1425 Martin Luther King Jr Way | | |
| Berkeley, California 94709 | * | |
| | | |
| **CONCUSSION INC. a/k/a or d/b/a** | * | |
| **Concussioninc.net** | | |
| P.O. Box 9629 | * | |
| Berkeley, California 94709 | | |
| irvmuch@yahoo.com | * | |
| | | |
| **Defendants.** | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## VERIFIED COMPLAINT

Plaintiff, John Doe[1], a Minor, by his parents, Jane Does and James Doe, and by undersigned counsel, Anne T. McKenna, Andrew C. White, and Silverman, Thompson, Slutkin & White, LLC, pursuant to the Federal Rules of Civil Procedure, hereby files suit against Defendants, Irvin Muchnik and Concussion, Inc. d/b/a www.concussioninc.net.

## NATURE OF THE ACTION

Minor John Doe resides in Carroll County, Maryland and attends a private, Catholic high school in Baltimore County. Minor John Doe is a member of the North Baltimore Aquatic Club ("NBAC"), a swim team that practices at the Meadowbrook Aquatic Center ("Meadowbrook") in Baltimore City, Maryland. Defendant Irvin Muchnick ("Muchnick") is a self-proclaimed

---

[1] Plaintiff's Motion for Leave for Use of a Pseudonym is filed concurrently with this Complaint.

"foremost reporter and writer" who operates a tabloid-style website, www.concussioninc.net, where Muchnick posts articles about individuals and events he targets in the greater sports community, including football and swimming.    To increase his SEO or search engine optimization[2] results, which drives web traffic to his website, generates profit and enables Muchnick to sell more of his self-published works, Muchnick writes dramatically-entitled posts wherein he frequently uses buzz words like "sexual assault" combined with the names of well-known schools, sports organizations and clubs, and individuals, including NBAC and the name of former NBAC swimmer, record Olympian and Baltimore-native, Michael Phelps.



[2] The goal of Search engine optimization (SEO) is to increase targeted Internet traffic by optimizing the website for search engines; this involves editing a website's content and code to increase its relevance to specific keywords and to remove barriers to the indexing activities of search engines.  http://docs.justia.com/cases/federal/district-courts/new-jersey/njdce/2:2009cv05465/234074/111/0.pdf?ts=1366808311; see also http://static.googleusercontent.com/external_content/untrusted_dlcp/www.google.com/en/us/webmasters/docs/search-engine-optimization-starter-guide.pdf  In sum, SEO refers to a process of increasing web traffic to one's website and thereby increasing profit through the use of key terms that are likely to drive a website's ranking when one searches a specific term via a searchengine.  Thus, by using the term "Michael Phelps"—currently the most famous American swimmer—and "sexual assault" as frequently as possible, Muchnick drives up his website's order of ranking in search results supplied by search engines like Google.

The minor incident that Muchnick uses as a springboard for his malicious defamatory attacks and privacy violations—to increase his SEO results for his Internet-revenue generation/cyber-bullying website—is an inadvertent physical contact that occurred in February 2012 between Minor John Doe and another swimmer in the pool during NBAC swim practice at Meadowbrook.  This contact occurred during a routine swim team practice with multiple swimmers practicing in one lane while under the direct supervision of a coach.  Although the alleged incident had been investigated, discussed and resolved between all parties, and the minors involved apologized and apologies were accepted, ten months after this incident, Muchnick falsely, maliciously and repeatedly began to publish defamatory statements that Minor John Doe is a "sexual predator," a "child sex abuse[r]," a "social deviant" and a "sexual assailant" who "digitally penetrated" and was repeatedly "jabbing fingers" in "the anus" of another swimmer.[3]

Only after Muchnick began his online fictionalized characterization of the minor event surrounding three minor swimmers ten months beforehand, did one of the swimmer's families approach law enforcement about the incident.

Plaintiff brings this action under Maryland and Federal law seeking compensatory damages as well as injunctive relief as to Counts I and II in order to stop irreparable harm for which there is no remedy at law as a result of the severe harm brought about by Defendants' willful, malicious actions in publishing confidential, defamatory, and false information about the

---

[3] As part of his efforts to increase his SEO results, Muchnick maliciously and/or recklessly correlates the February 2012 incident with an array of completely unassociated events, such as: the unrelated, tragic death of a minor swimmer at Meadowbrook in 2012; an incident from years ago when Michael Phelps was alleged to be "smoking a bong"; relationships between teenaged swimmers at Meadowbrook over 30 years ago; and in what would be an ironic comparison if the situation were not so serious, Muchnick repeatedly likens the incident to teen suicides across the nation from cyber-bullying.

Minor Plaintiff on Defendants' website. By this suit, Plaintiff invokes all available equitable and legal remedies to remedy the wrongful conduct carried out by Defendant.

## THE PARTIES

1.      Plaintiff John Doe is now 17 years old; his parents Jane Doe and James Doe have been married for twenty years and have four minor children. Minor John Doe is the eldest of the four children. (Ex. A, Affidavit of James Doe, ¶ 1-2.)[4] The Doe family resides in Carroll County, Maryland. (Ex. A, ¶ 2.)

2.      Defendant Irvin Muchnick ("Muchnick") is a resident of California; his primary residence is 1425 Martin Luther King Jr. Way, Berkeley, CA 94709. Muchnick uses a business address of Irvin Muchnick, P.O. Box 9629, Berkeley, CA 94709. At all relevant times, Muchnick was an employee, agent and/or representative of "Concussion Inc." as Concussion Inc.'s "author."[5]

3.      Defendant Concussion Inc. operates via a website www.concussioninc.net, which is prominently labeled as being written by "author Irvin Muchnick." On the concussioninc.net website, Muchnick routinely publishes articles or make posts on a variety of subjects, and www.concussioninc.net is the Internet site on which all publications at issue in this Complaint.



---

[4] Exhibit is the Redacted Affidavit of James Doe, the Minor Plaintiff's father. An unredacted Affidavit has been filed with the Court under seal.
[5] http://concussioninc.net/?page_id=2

4.     The  Defendant  website  www.concussioninc.net  is  registered  through

GoDaddy.com under the domain name, Concussioninc.net, and the Registrant is listed as Irvin

Muchnick. (Ex. B.)  Concussioninc.net does not provide any physical address for the company's

location,  but  the  website  domain  hosting  records  list  as  "Technical  Contact"  the  following:

Muchnick,  Irvin,  irvmuch@yahoo.com,  P.O.  Box  9629,  Berkeley,  California  94709,  United

States, 510-588-5405.

5.     Although Defendant Concussion Inc. is represented to be an incorporated entity,

none  of  the  50  states'  various  state  departments  of  business/corporate  records  reveal

incorporation  of  such  a  company.  The  primary  tab  or  link  on  concussioninc.net  is  the

"Concussion Inc. Bookstore"—this tab provides an online venue for sales of Muchnick's self-

published  one  .pdf  publication  entitled,  *PENN STATE IN THE POOL: The*

*Cover-Up of the USA Swimming Youth Coach Sex Scandal*.[6]



6.     The  website  also  contains  links  for  viewers  to  purchase  Muchnick's  self-

published works via Amazon.com.[7]  The concussioninc.net website also has a comment section

and solicits comments from readers in the particular jurisdiction that each article is addressing.

_____

[6] http://concussioninc.net/?page_id=5578;
[7] See, e.g., http://www.amazon.com/PENN-STATE-THE-POOL-ebook/dp/B007UK1BG0/ref=sr_1_1?s=digital-text&ie=UTF8&qid=1335459096&sr=1-1

**JURISDICTION AND VENUE**

7.     This Court has original jurisdiction in the above-captioned civil action pursuant to 28 U.S.C.A. § 1331,[8] because Count VI—47 U.S.C.A. § 231; Count VII—15 U.S.C.A. § 6501; and Count VIII—18 U.S.C.A. § 2261A, all assert causes of action based the laws the United States and, accordingly, present federal questions over which this court has original jurisdiction.

8.     This Court has subject matter jurisdiction in the above-captioned civil action pursuant to 28 U.S.C.A. § 1332(a)(1)  because the amount in controversy exceeds $75,000 and the matter is between citizens of different states.  The Minor Plaintiff John Doe and his parents are citizens of the state of Maryland.  Defendant Irvin Muchnick is a citizen of the state of California.  Defendant Concussion Inc. d/b/a www.concussioninc.net is a website operated by Defendant Muchnick with its principal place of business, registration and technical contact information associated with P.O. Box in Berkeley, California, and accordingly jurisdiction is proper pursuant to 28 U.S.C.A. § 1332(c)(1).

9.     This Court may exercise personal jurisdiction over the non-resident Defendants pursuant to Maryland's long-arm statute, MD Code Ann., Cts. & Jud. Proc. § 6–103.[9]

10.    Defendants' contacts with the State and Defendants' conduct have caused tortious injury within the State; Defendants regularly, routinely and repetitively have attempted to influence the outcome of State juvenile proceedings; Defendants have engaged in a consistent course of conduct that calls upon Marylanders to provide Defendants with comments and calls upon Marylanders to assist Defendants to gain information; Defendants have targeted

---

[8] 28 U.S.C.A. §1331 provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[9] The exercise of personal jurisdiction is proper under Maryland's long-arm statute as Defendants have engaged in "actions that culminate in purposeful activity within the State." *Young Again Products, Inc. v. Acord*, 307 F.Supp.2d 713, 716 (2004).

Maryland's health and safety practices, and NBAC's health and safety practices; Defendants are attempting to sell Defendants' products to Marylanders; and Defendants maliciously and repetitively have targeted Maryland minors and publicized the names of minor Maryland citizens labeling them as criminals and social deviants, particularly the Minor Plaintiff.

11.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim in this case occurred within the judicial district.

## FACTS COMMON TO ALL COUNTS

**A.     Background Facts**

12.     Minor John Doe attended elementary school and middle school in Carroll County's public schools, and he has attended the same Catholic high school in Baltimore County since his freshman year, where he is currently a junior.   At no time in elementary, junior high or high school has Minor John Doe ever been accused of or reprimanded for bullying classmates or other students, nor was Minor John Doe's treatment of others ever called into question with the exception of the alleged incident discussed below. (Ex. A, ¶ 3-4.)

13.     Minor John Doe has swum for NBAC for the last six years, since the age of eleven. (Ex. A., ¶ 5.)   NBAC is a member of USA Swimming, the national governing body for the sport of swimming in the United States, and Minor John Doe is a swimmer registered and insured with USA Swimming. (Ex. A., ¶ 5-6.)

14.     NBAC's Head Coach and Chief Executive Officer is Bob Bowman ( "Bowman"). Meadowbrook's general manager is John Cadigan ("Cadigan"). (Ex. A., ¶ 8.)

15.     At no time in the six years during which Minor John Doe has swum on the NBAC team has any fellow team member, swimmer, parent or coach complained to any NBAC coach or

to the Minor John Doe's parents about Minor John Doe's conduct or treatment of any other swimmer with the exception of the alleged February 2012 incident. (Ex. A., ¶ 7.)

16.     For swim practice purposes and like most competitive swim clubs, NBAC's swim team members are grouped with swimmers of the same ability, and such grouped swimmers often move at similar rates of speed.  This requires swimmers to move quickly through the lane and off the end of the pool wall at each turn to avoid striking other swimmers.  (Ex. A., ¶ 11.) Due to the number of swimmers in a lane, the proximity of swimmers in the swim lane, and the pace and movement of multiple swimmers in one swim lane, unintended collisions and bodily contact commonly occur during competitive swim practices.  (Ex. A., ¶ 12.)

17.     Over the years, many swimmers have accidentally bumped or physically contacted Minor John Doe.  Likewise, Minor John Doe inadvertently has bumped or physically contacted other swimmers in his many years of swim team practices.    These are routine occurrences for all competitive swimmers, and have never given rise to a complaint by or against Minor John Doe with the exception of the February 2012 alleged incident. (Ex. A., ¶ 13.)

18.     DeSales Kelly-Eck is the mother of M. Eck.[10]  M. Eck is now a college freshman, but in February of 2012, M. Eck swam on the NBAC swim team together with Minor John Doe. (Ex. A., ¶ 14.)

19.     M. Eck was a senior in high school in February of 2012. Although two years apart in school, M. Eck swam for NBAC in the same practice ability level as Minor John Doe for three years. (Ex. A., ¶ 15-16.)

C.     **February 2012 Swim Practice**

20.     In February of 2012, DeSales Kelly-Eck mentioned that, one evening during

---

[10] Although M. Eck is now an adult over the age of 18 and college student, it is unclear to Plaintiff's counsel if M. Eck was 18 at the time of the alleged incident so he shall only identified by his first initial.

swim practice at Meadowbrook, Minor John Doe had bumped her son M. Eck, and she stated another minor swimmer by the name of C. K.[11] had poked her son.  She alleged this incident occurred when Minor John Doe, C. K., M. Eck, and multiple other male swimmers were swimming in the same practice lane under the supervision of a coach. (Ex. A., ¶ 17.)

21.     NBAC and Meadowbrook coaches and employees investigated the incident. Minor John Doe acknowledged that, in the course of turns, he accidentally bumped or contacted M. Eck, because M. Eck was stopped and was blocking the wall.  At no time in February 2012 did any coach, any swimmer or DeSales Kelly-Eck state to Minor John Doe or his parents that Minor John Doe had engaged in any conduct of a sexual nature towards M. Eck. (Ex. A., ¶ 18-19.)

22.     On February 28, 2012, Cadigan met with Jane and James Doe and Minor John Doe.  Immediately after that February 28, 2012 meeting with Coach Cadigan, Minor John Doe wrote a letter of apology to M. Eck and his parents.  (Ex. A., ¶ 20.)   On February 29, 2012, DeSales Kelly-Eck wrote an email to Cadigan expressing that the Eck family had read Minor John Doe and the other minor swimmer's notes of apology.  After extensive Bible quotations, Desales Kelly-Eck advised Cadigan that M. Eck and their family had accepted the apology notes and wanted to move forward. The email, written within a week of the February 2012 alleged incident, makes no mention or accusation of sexual assault, child abuse or digital penetration.

23.     On April 20, 2012, DeSales Kelly-Eck wrote an email to Cadigan wherein she expressed her gratitude to Cadigan for meeting with her; she asked for Cadigan's corned beef recipe; and she told him about her son M. Eck creating his own website where he expresses his political views.  DeSales Kelly-Eck closed the email with the line, "Wishing you and yours our family's warmest regards, DeSales." Although only two months after the alleged incident, the

---

[11] Pursuant to Rule 5.2 of the FRCP, this minor swimmer is only being identified by his initials.

email makes no mention or accusation of sexual assault, child abuse or digital penetration.

24.     The Doe family heard nothing further about the February 2012 incident until Cadigan contacted them on December 22, 2012, and advised that NBAC had been contacted by Defendant Muchnick.  Cadigan stated that Muchnick had been blogging about the tragic death of a minor swimmer at Meadowbrook in 2012 and advised that Muchnick was going to blog about the alleged February 2012 incident on his website, www.concussioninc.net. (Ex. A., ¶ 23.)

25.     In January of 2013—almost one year after the alleged incident—the Doe Family learned that the Eck family had contacted Baltimore City Police. (Ex. A., ¶ 24.)   The Ecks did so one month after Defendant Muchnick's first December 2012 post that a "sexual assault" had occurred in February of 2012.

26.     Sometime in the third week of January 2013, two Baltimore City Police Officers appeared unannounced at Doe Family's residence in Carroll County, Maryland on a weekday evening and advised that the Eck family had filed a Complaint against the other minor swimmer, C.K. and Minor John Doe.  (Ex. A., ¶ 25.)   The two Baltimore City Police Officers stated that the Eck family "was under a lot of pressure by outside influences."  (Ex. A., ¶ 26.)

27.     On or about February 21, 2013, Jane and James Doe received a letter from the Maryland Department of Juvenile Services (MD-DJS) dated 2/20/13, advising that their minor son John Doe had been referred to the MD-DJS for a Complaint. (Ex. A., ¶ 27.)   On March 8, 2013, MD-DJS sent Jane and James Doe a letter advising that MD-DJS the Complaint was being forwarded to the Office of the State's Attorney for Baltimore City for investigation. (Ex. A., ¶ 28.)

28.     In March of 2013, Jane and James Doe were advised by their attorney, Craig Ward, Esq. that the Baltimore City State's Attorney's Office had investigated the matter and

determined that no crime had been committed.  No charges were ever filed by the Baltimore City

State's Attorney, and no further action was taken by MD-DJS.  (Ex. A., ¶ 29.)

**D.**     **Content of Website Articles/Blog Posts**

29.     Since early 2012, NBAC and Meadowbrook in particular have been a SEO-

results-oriented target of Muchnick's web posts as part of his larger, self-directed campaign

against USA Swimming, USA Swimming Coaches and USA Olympics.  Muchnick describes

USA Swimming as a story of sexual molestation, which he summarizes as such:

> [E]ven many of the most serious students of feminism and the scourge that is
> sexual molestation do not fully appreciate how the swimming story — whose
> scale dwarfs that of Penn State — takes us to the white-hot center of this issue, at
> the nexus of sexual relations (an inevitable byproduct of human affairs) and abuse
> of power (which responsible people agree must be eradicated).[12]

30.     Muchnick's initial posts about NBAC and Meadowbrook centered around the

tragic drowning death of a minor swimmer at Meadowbrook in 2012 (Muchnick has repeatedly

plastered the name of the deceased minor across his website and called upon the deceased

minor's family to join him in gathering information against NBAC and Meadowbrook)[13]  and a

variety of other tawdry, SEO-result driven articles and allegations,[14] including Muchnick's

---

[12] Ex. E; http://concussioninc.net/?p=7375

[13] http://concussioninc.net/?page_id=15; See, e.g., Flashback to February: Concussion Inc.'s Exposure of the Tardy
Incident Report on Lowenthal Death — Falsely Suggested Three Lifeguards Present,  Published April 11th, 2013;
EXCLUSIVE: Baltimore Pool's Report on Lowenthal Death Was Filed Late With Health Department and Seems to
Claim Three Lifeguards Were Present, Published February 18th, 2013; Now It Can Be Told: Five Redacted
Questions From Michael Phelps Swim Club's Half-Baked Maryland Health Department Report on Drowned
Teenager Louis Lowenthal; published February 20th, 2013.
In an April 24, 2013 post, Muchnick called upon the deceased boy's family to aid him in his campaign for
information against NBAC and Meadowbrook, http://concussioninc.net/?p=7392: "So there appear to be only two
possible sources of further public information. One would be discovery in a wrongful-death civil lawsuit, should the
family choose to file one."

[14] See, Ex. F;  http://concussioninc.net/?p=6459  which lists the following articles:
Dear USA Swimming Board of Directors: Here's Your Holiday Weekend Reading on Sex Abuse and Other Safety
Issues at Michael Phelps' North Baltimore Aquatic Club
Michael Phelps' Coach Goes to Work for Consulting Company of Ex-USA Swimming President Dale Neuberger –
Another One Who Has Problems With 'the Truth and Nothing But the Truth'
Published September 11th, 2012; 'Swimming Coach Accused of Molestation at Michael Phelps' North Baltimore
Aquatic Club' — Tim Joyce, WBAL, Published October 3rd, 2012; Once More With Feeling: WBAL Reinstates

bizarre focus on  two alleged consensual relationships between former teenaged Meadowbrook

swimmers from almost 30 years ago (in the 1980s).

31.     In December 2012, Muchnick began adding to his website fictionalized accounts

of the February 2012 incident, which he identified as a "sexual assault" at Meadowbrook.




Story on Sex Abuse at Michael Phelps' Swim Club — Reschedules Journalist Tim Joyce's Radio Interview Today
Published October 4th, 2012; A Few Words About ID'ing Sex-Abusing Swimming Coaches Published October 4th,
2012; Michael Phelps' Coach, Bob Bowman, 'Cannot Comment' on Story of Sex Abuse at North Baltimore Aquatic
Club. English Translation: The Story Is True. Published October 4th, 2012; Hearst Radio Embarrasses Itself, Pulls
Entire Archive of Tim Joyce's Articles on USA Swimming Sex Abuse Scandals, Published October 5th, 2012;
Baltimore Sun Takes a Swing at Story of Molestation of Girl Swimmers at Michael Phelps' Club — Hits a Ringing
Foul Tip, Published October 6th, 2012; Swimmer-Blogger Tony Austin: USA Swimming Has a 'Rape and Escape'
Loophole, Published October 6th, 2012; Swimming Hall of Famer Murray Stephens Is the Coach Who Left Michael
Phelps' North Baltimore Aquatic Club Last Year Amidst Sex Abuse Allegation, Published October 8th, 2012; Did
USA Swimming Lie About Telling Police the Allegations Against Coach Murray Stephens of Michael Phelps'
North Baltimore Aquatic Club?, Published October 8th, 2012; NO LONGER CENSORED: Investigative Reporter
Tim Joyce's Story on Sex Abuse Allegations at Michael Phelps' North Baltimore Aquatic Club, Published October
12th, 2012; USA Swimming Sex Abuse Scandal Flashback: Muchnick's Pre-Olympics Story — Killed by Yahoo
Sports, Picked Up by MomsTeam, Published October 17th, 2012; EXCLUSIVE: Baltimore County Police Confirm
2010 Letter From USA Swimming Re Sex Abuse Allegation at Michael Phelps' North Baltimore Aquatic Club,
Published October 22nd, 2012; Baltimore County Police Now Searching for USA Swimming's 2010 Letter About
Sex Abuse Allegation That Led to Departure of North Baltimore Aquatic Club's Hall of Fame Coach, Published
October 22nd, 2012; Police Account of Processing of Sex Abuse Allegations at Michael Phelps' Baltimore Swim
Club Is As Skimpy As a Speedo Bikini, Published October 23rd, 2012; Police Blocking Release of Referral to
Crime Against Children Unit of North Baltimore Aquatic Club Coach Sex Abuse Allegation, Published October
24th, 2012; Rick Curl Arrest: Let's Connect the Swimming Sex Abuse Dots, From Washington to Baltimore … And
All the Way to Colorado Springs, Published October 26th, 2012; In North Baltimore Aquatic Club Sex Abuse
Scenario, We Wait For More Documents and Victims to Emerge, Published October 26th, 2012; Michael Phelps'
North Baltimore Aquatic Club Deals With New Challenge: 14-Year-Old's Death, Published November 3rd, 2012;
Public Documents on North Baltimore Aquatic Club Sex Abuse Allegations Dangle in the Unhelpful Ozone,
Published November 5th, 2012; Key Details Still Elusive Following Yesterday's Funeral of North Baltimore
Aquatic Club Swimmer Louis Lowenthal (Which Michael Phelps and Bob Bowman Do Not Appear to Have
Attended), Published November 7th, 2012; Anonymous Poster: Michael Phelps WAS at Lowenthal Memorial,
Published November 9th, 2012; In Community Silence on Circumstances of Baltimore Swimmer's Death, Look to
Pending Autopsy, Published November 14th, 2012; Tim Joyce Guest Column: The Search for the Truth About Sex
Abuse at the North Baltimore Aquatic Club … And the Search for Michael Phelps, Published December 14th, 2012;

32.    On December 21, 2012, Muchnick posted an article entitled, *Teen Was Sexually Assaulted by Teammates at Michael Phelps' North Baltimore Aquatic Club; Coach Bowman Criticized 'Moral Superiority' of Victim's Mother, Suggested Quitting Team*. In that article, Muchnick describes in detail the nature of the police investigation of the minors, and claims he was given contents of the "entire file" from Maryland's "Child Protective Services."

> Baltimore police, on referral from a Maryland social services agency, are investigating the sexual assault of a teenager by two teammates earlier this year during a practice session of Michael Phelps' North Baltimore Aquatic Club (NBAC) at the Meadowbrook Aquatic Center, ConcussionInc.net has learned. Last week a former NBAC employee filed papers about the incident with state Child Protective Services. In addition, California swimmer-blogger Tony Austin — who, along with this reporter, was given copies of the file — forwarded email texts and other documents to Susan Woessner, the athlete protection officer of USA Swimming in Colorado, the sport's U.S. Olympic Committee-authorized national governing body…



CONCUSSION INC.
author Irvin Muchnick

Concussion Inc. Bookstore

Bookstore
About Irvin Muchnick

**Teen Was Sexually Assaulted by Teammates at Michael Phelps' North Baltimore Aquatic Club; Coach Bowman Criticized 'Moral Superiority' of Victim's Mother, Suggested Quitting Team**
Published December 21st, 2012, Uncategorized

Baltimore police, on referral from a Maryland social services agency, are investigating the sexual assault of a teenager by two teammates earlier this year during a practice session of Michael Phelps' North Baltimore Aquatic Club (NBAC) at the Meadowbrook Aquatic Center. ConcussionInc.net has learned

Last week a former NBAC employee filed papers about the incident with state Child Protective Services. In addition, California swimmer-blogger Tony Austin — who, along with this reporter, was given copies of the file — forwarded email texts and other documents to Susan Woessner, the athlete protection officer of USA Swimming in Colorado, the sport's U.S. Olympic Committee-authorized national governing body

33.    In this first 12/21/12 article, Muchnick acknowledged that he should not identify Plaintiff John Doe by name because he was a minor.[15] But Muchnik claimed that Minor John Doe was an assailant who "repeatedly stuck fingers into the anus of a third teenage swimmer in a practice pool."

---

[15] The two teammates who were the focus of the teen's family's complaint to club officials are also teenage boys and, like the victim, are not being named in this article.

34.     Later in the day on December 21, 2012, Muchnick posted another article this one entitled, *Dear USA Swimming Board of Directors: Here's Your Holiday Weekend Reading on Sex Abuse and Other Safety Issues at Michael Phelps' North Baltimore Aquatic Club*, in which Muchnick claimed that two teenagers sexually abused another teen at NBAC.



35.     On December 24, 2012, Muchnick published another article again discussing the actions and involvement of Maryland Child Services and Baltimore Police and revealed confidential records about minor NBAC swimmers including John Doe. (Exh I).   On December 26, 2012, Muchnick posted an article claiming that the alleged February 2012 incident was one of "child sex abuse."



36.     On December 30, 2012, Muchnick stated that "two elite swimmers" at NBAC

"assaulted a teammate in February in the practice pool" and stated that "the assailants repeatedly jabbed fingers into his anus under water." (Ex. K).  On December 31, 2012, Muchnick again described a "sexual assault…by two teammates" and advised that Baltimore Police and "Maryland child protective services" were involved. (Ex. L).

37.     On February 7, 2013, Muchnick posted an article wherein he complained and informed readers, "[s]ources in the state's attorney's office say prosecutors are slow-walking their investigation of the February 2012 sexual assault by two teammates of another North Baltimore Aquatic Club swimmer." (Ex. M).

38.     On February 12, 2013, Muchnick posted an article entitled, *SwimSwamSwum on North Baltimore Aquatic Club Sex Assault Story*, wherein he brags that his, "blog has characterized the incident as a sexual assault by two swimmers on a teammate in the practice pool at the Meadowbrook Aquatic Center, and published, among other details, the full texts of both the vague apologies of the assailants."

39.     On February 18, 2013, Muchnick published an article entitled, *After Assailant Swimmers Are Brought to Justice, Big Question Is Holding North Baltimore Aquatic Club Leaders Accountable for This Sick Environment*.  In the 2/18/13 post, Muchnick describes the incident as "swimmer-on-swimmer sex assault" and informs readers that prosecutors are going to be charging the two minor alleged assailants, stating:

> Though I previously described prosecutors as "slow-walking" the investigation of the February 2012 sexual assault of a teen North Baltimore Aquatic Club swimmer by two teammates, sources there are offering a more encouraging prognosis. They say charges may be brought very soon.
> This first intervention of the justice system, however, would cover only part of making amends for this episode. I would even argue that punishment of the assailants, both of whom are juveniles, is the least important part. What will remain is holding accountable the leadership of the club — who allowed boys from families shelling out hundreds of dollars a month in dues, in the hope of turning them into world-class swimmers, to get away with escalating harassment

… until the harassment turned sickening and, finally, criminal.



**After Assailant Swimmers Are Brought to Justice, Big Question Is Holding North Baltimore Aquatic Club Leaders Accountable for This Sick Environment**
Published February 18th, 2013, Uncategorized

Though I previously described prosecutors as 'slow-walking' the investigation of the February 2012 sexual assault of a teen North Baltimore Aquatic Club swimmer by two teammates, sources there are offering a more encouraging prognosis. They say charges may be brought very soon.

This first intervention of the justice system, however, would cover only part of making amends for this episode. I would even argue that punishment of the assailants, both of whom are juveniles, is the least important part. What will remain is holding accountable the leadership of the club — who allowed boys from families shelling out hundreds of dollars a month in dues, in the hope of turning them into world-class

40.   On February 21, 2013, Muchnick posted an article again describing the February 2012 incident as "swimmer-on-swimmer sex assault" and states that it is the subject of an "open investigation" by Baltimore Police and the State's Attorney.

41.   On March 25, 2013, Muchnick published a letter from DeSales Kelly-Eck (whom he describes as the "the mother of the victim of the February 2012 sexual assault by two teammates") to USA Swimming employees wherein DeSales Kelly-Eck attaches an article about "rape"; she discusses nurturing an infant in her womb for nine months; she tells the employees that if they fail to establish a safe environment for swimmers then they share "the blame that Joe Paterno and…other coaches…shared"; she states that the "blood" of an Illinois teen who committed suicide "is quite literally on your hands"; and she describes Minor John Doe as a "sexual predator."[16]

42.   Although it was clear to dozens of persons affiliated with NBAC and swimmers on the NBAC team that Muchnick's posts were directed against Minor John Doe and another minor swimmer, C.K., on March 25, 2013, Muchnick for the first time identified by name C.K., the other minor allegedly involved in the alleged incident (not the Minor Plaintiff in this case) in an article entitled, *North Baltimore Aquatic Club Juvenile Brags After State's Attorney Declines*

---

[16] John Doe is not identified by name in the letter from DeSales Kelly Eck, but from the information contained in the letter it is clear that she is identifying and referring to the Minor Plaintiff.

*to Pursue Criminal Charges in Last Year's Pool Sex Assault.* In this post, Muchnick describes in detail the police investigation, the Juvenile Services Investigation and the disposition by the Baltimore City's State's Attorney of the Eck's Complaints against the two minor swimmers involved in the incident, stating:

> In January 2013 the [Eck] family filed a complaint with the Baltimore police sex crimes unit. The police referred the matter to the state's attorney.
>
> The family's hope was that the two assailants would be required to attend a victims' awareness class and perform community service. The state's attorney pursued a resolution on this basis. Prosecutors told the family that the filing of a delinquency petition with the Juvenile Court would have been complicated both by the criminal conviction burden of proof ("beyond a reasonable doubt," rather than "preponderance of the evidence") and by Maryland's one-year statute of limitations for such offenses.
>
> However, after [minor's name redacted] and the other assailant refused to meet with the Department of Juvenile Services for an informal disposition of the complaint, formal charges were dropped.

43.     On April 18, 2013, Muchnick specifically identified Minor John Doe by name.



**CONCUSSION INC.**
author Irvin Muchnick

Concussion Inc. Bookstore

Bookstore
About Irvin Muchnick
About Tim Joyce
What They're Saying
Irv in the media
Irv's Supreme Court case and writers' rights work
Contact Irv
Archives

Irvin Muchnick Confront

Irv on YouTube

Website designed by Saaracnee

**Baltimore Mailbag: Swimmers Gone Wild at Out-of-Town Meet. Or As They Call It at the Club Made Famous By Michael Phelps … April.**
Published April 18th, 2013, Uncategorized

"… We will not be held to your standard of moral superiority nor those of any other single member. NBAC is not a public school or institution. It is a private club whose members choose to join and participate and are also free to choose to join another organization if the program does not meet their personal needs…." – email from North Baltimore Aquatic Club head coach/CEO Bob Bowman to the mother of a teen swimmer who was *sexually assaulted by two teammates in the practice pool*

In the last two years, the North Baltimore Aquatic Club has seen its Hall of Fame founder, Murray Stephens, go into hiding after allegations of his sexual molestation of an underage swimmer. It has seen a teen swimmer, Louis Lowenthal, drown without a lifeguard in sight. And as Michael Phelps' coach Bob Bowman so charmingly reminds us above, it has blown off the unrefuted information that two privileged brats sexually assaulted a teammate who had been harassed and bullied for more than a year.

With all this behind us, how nice to be able to report that NBAC is working hard prospectively to protect the young athletes under its supervision. Not.

I get a lot of anonymous emails, some of which are obviously designed to bait me into inaccurate coverage. But this one from an NBAC parent, about the team's travel to a recent meet in Buffalo, checked out:

"… Several kids were caught locking others out of their hotel room while the ones inside had sex. The coaches caught them and, guess what? No consequences…."

The parent went on to identify one of the boys as a former McDonogh prep school kid who got expelled there for stealing computers, and some of the girls as daughters of NBAC board members. The former was also part of the clique who had been taunting the eventual sex-assault victim on Facebook.

Concussion Inc. already has named ████████ as one of the February 2012 assailants in the unprosecuted sex assault. We did so because ████ opened the door with his loud and disgusting remarks to friends and fellow swimmers about how he beat the rap. See 'North Baltimore Aquatic Club Juvenile Brags After State's Attorney Declines to Pursue Criminal Charges in Last Year's Pool Sex Assault,' March 25, http://concussioninc.net/?p=7224.

Now it is time to identify some of the other social deviants at NBAC — who, it must be emphasized, are probably just replicating behaviors enabled by their adult role models.

████████ co-sex assault perpetrator was ████████. Their vague and insincere email apologies were published here three months ago. See 'Full Text of Apologies' of Assailants in Sex Assault on Swimmer at Michael Phelps' North Baltimore Aquatic Club,' January 3, http://concussioninc.net/?p=6495

44.     In this 4/18/13 post, Muchnick described the Minor Plaintiff and his fellow minor swimmer as the "two privileged brats that sexually assaulted a teammate." Muchnick called Minor John Doe a "social deviant" and added in the Minor Plaintiff's parents to the mix, stating, "Now it is time to identify some of the other social deviants at NBAC — who, it must be emphasized, are probably just replicating behaviors enabled by their adult role models." "The [name of minor redacted]'s co-sex assault perpetrator was [Minor John Doe]." Muchnick described events at NBAC and the conduct of Minor Plaintiff John Doe as "the cell of hate and perversity we are following here in Baltimore."[17]

45.     On April 22, 2013, Muchnick posted a long article covering a range of subjects, but in which he describes Minor John Doe as a "privileged prepp[y]" who committed an "unprosecuted sex assault…on a fellow teen swimmer in the practice pool."

46.     On April 23, 2013, Muchnick then published an article entitled, *Second Open Letter to Michael Phelps' Mom From the Mother of the Victim of the North Baltimore Aquatic Club Sex Assault*, in which he posted the contents of a lengthy letter presumably written by DeSales Kelly-Eck to Michael Phelps' Mother, wherein DeSales Kelly-Eck states, "I am the mother of the teenager who was bullied and harassed by his teammates at the North Baltimore Aquatic Club — culminating in sexual assault by two of his teammates."



---

[17] Muchnick also likened the alleged February 2012 incident at NBAC to that of a 15-year old girl who committed suicide after cell-phone photos of her being sexually assaulted while she was passed out were circulated on social media.

47.     On April 24, 2013, Muchnick posted an article, *Minnesota Teen Pleads Guilty to Sexual Assault for Some of Same Things Two North Baltimore Aquatic Club Assailants Did* wherein he says that Minor John Doe is guilty of "digitally penetrating" M. Eck.



48.     Muchnick posted a second article on April 24, 2013, again identifying by name the minor who tragically drowned at Meadowbrook in 2012, and he called upon the deceased minor's family to join in his crusade against Meadowbrook to get information against Meadowbrook, stating, "So there appear to be only two possible sources of further public information. One would be discovery in a wrongful-death civil lawsuit, should the family choose to file one." In that post, Muchnick specifically requests assistance from any Marylander who can help mount a challenge to Maryland's laws regarding public information.

49.     Defendants Muchnick and Concussion Inc. actively target their articles and posts at NBAC and Meadowbrook, both Maryland organizations, their employees and coaches, and at

minor Maryland citizens. The website actively solicits Maryland citizens to comment upon the stories and posts, buy Muchnick's publications, and respond by posting comments from Maryland residents whose children swim at Meadowbrook.



50. Defendants Muchnick and Concussion Inc. actively seek to damage the lives of minor Maryland residents by maliciously influencing public opinion through grotesque, malicious, false, defamatory accusations of events at Meadowbrook, and through grotesque, malicious, false, and defamatory statements about the course and outcome of a confidential, sealed investigation of two minors—*the outcome of which, in point of fact, represents that the States' Attorney determined there was not a basis to proceed against the minors.*

## COUNT I

### DEFAMATION UNDER MARYLAND LAW

51.     Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

52.     Plaintiff is a private figure.

53.     Defendants posted multiple blog entries on the website concerning Plaintiff, the content of which exposed Plaintiff to public scorn, hatred contempt, and ridicule.

54.     Defendants state that Plaintiff engaged in repeated, heinous, criminal sexual acts. The injurious nature of these allegations, on their own, is self-evident, and defamatory *per se*.

55.     Defendants knowingly published these comments on their internet blog with knowledge of the falsity of their statements or reckless disregard for their truth.

56.     Defendants' statements concerning Plaintiff are provably false. Plaintiff is no longer the subject of a criminal investigation, and the sealed investigation record itself contradicts the charges Defendant has publically imputed on Plaintiff.

57.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered, and will continue to suffer, acute personal injury in the form of severe emotion distress as a result of Defendants' defamatory statements on the Internet, identifying Plaintiff by name, and falsely alleging Plaintiff is a sexual deviant and involved in criminal sexual conduct.

58.     As a direct and proximate cause of Defendants' actions, Plaintiff has suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge his family, friends, and other members of his community are viewing these statements made by Defendants.

59.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered, and

continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge that the publication of this material, accusing Plaintiff of sexual assaulting another minor, could spur members of Plaintiff's community to seek to cause Plaintiff harm.

60.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered economic losses including (without limitation): diminished earning capacity and economic harms relating to public mistrust following these posts, and potential harm to Plaintiff's ability to pursue a collegiate education and to obtain employment.

61.     Defendants' actions were motived by actual malice as Defendants intentionally published false and defamatory information on Defendants' website, knowing they would cause Plaintiff extreme emotion distress and economic lose. Further, Defendants' actions identifying Plaintiff by his name constituted a reckless disregard for Plaintiff's personal safety.

WHEREFORE, Plaintiff demands Five-Hundred-Thousand dollars ($500,000) in compensatory damages and Five-Hundred-Thousand dollars ($500,000) in punitive damages, injunctive relief in the form of a temporary restraining order and a preliminary injunction, plus attorneys' fees, expert fees, other reasonable costs and any relief the Court may deem equitable and just in light of the severe harm perpetrated upon Plaintiff by Defendants.

## COUNT II

### INVASION OF PRIVACY--INTRUSION UPON SECLUSION

62.     Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

63.     Because criminal investigations of minors are confidential by law, Plaintiff had a reasonably expectation of privacy in this matter.

64.     Defendants intruded upon Plaintiff's private matter by posting multiple blog posts

to Defendants' website discussing the criminal investigation against Plaintiff, and doing so in a false and fabricated matter.

65.     The fact that a sealed juvenile investigation was publically discussed on an Internet blog, and that Defendants added additional false criminal charges in order to defame Plaintiff, would be highly offensive to a reasonable person.

66.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge that he was publically named as a sexual deviant and accused of committing heinous sexual acts.

67.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge his family, friends, and other members of his community have viewed these statements made by Defendants.

68.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge that the publication of this material, accusing Plaintiff of sexual assaulting another minor, could spur members of Plaintiff's community to seek to cause Plaintiff harm.

69.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered economic losses including (without limitation): diminished earning capacity and economic harms relating to public mistrust following these posts, and potential harm to Plaintiff's ability to pursue a collegiate education and loss of employment opportunity.

70.     Defendants' actions were motivated by actual malice as Defendants knew criminal proceedings involving minors are confidential. Defendants maliciously created

additional harm to Plaintiff by publically making numerous false criminal accusations of an especially heinous nature against a minor. Further, Defendants' actions identifying Plaintiff by his name constitute a reckless disregard for Plaintiff's personal safety and have placed the minor Plaintiff in grave danger.

**WHEREFORE,** Plaintiff demands Five-Hundred-Thousand dollars ($500,000) in compensatory damages and Five-Hundred-Thousand dollars ($500,000) in punitive damages, injunctive relief in the form of a temporary restraining order and a preliminary injunction, plus attorneys' fees, expert fees, other reasonable costs and any relief the Court may deem equitable and just in light of the severe harm perpetrated upon Plaintiff by Defendants.

**COUNT III**

**INVASION OF PRIVACY--UNREASONABLE PUBLICITY GIVEN TO PRIVATE LIFE**

71.     Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

72.     Defendants intentionally published over the Internet multiple blogs posts fictionalizing a minor incident that occurred between Plaintiff and M. Eck, which was resolved privately between the parties.

73.     Defendants intentionally published over the Internet false information relating to the criminal complaint the Eck family filed against the minor Plaintiff in January 2013.

74.     The fact that two members of the NBAC swim team made physical contact during a swim practice is not of public concern.

75.     The fact that a criminal complaint was filed against the minor Plaintiff is not of public concern as criminal complaints against minors are sealed in Maryland by law.

76.     Defendants' acts of publishing multiple articles about the February 2012 incident

and the criminal complaint filed against Plaintiff violated Plaintiff's reasonable expectation of privacy.

77.    The acts of publishing this material, and Defendants' false statements relating to this material, would be highly offensive to any reasonable person.

78.    As a direct and proximate cause of Defendants' actions, Plaintiff suffered and continues to suffer acute personal injury in the form of severe emotional distress from the knowledge that he was publically falsely named as a sexual deviant and falsely accused of committing numerous sexual crimes.

79.    As a direct and proximate cause of Defendants' actions, Plaintiff suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge his family, friends, and other members of his community have viewed these statements made by Defendants.

80.    As a direct and proximate cause of Defendants' actions, Plaintiff suffered and continues to suffer acute personal injury in the form of severe emotional distress from the knowledge that the publication of this defamatory material, accusing Plaintiff of sexual assaulting another minor, could spur members of Plaintiff's community to seek to cause Plaintiff harm.

81.    As a direct and proximate cause of Defendants' actions, Plaintiff suffered economic losses including (without limitation): diminished earning capacity and economic harms relating to public mistrust following these posts, and potential harm to Plaintiff's ability to pursue a collegiate education and lost employment opportunity.

82.    Defendants' actions were motivated by actual malice as Defendant gave unreasonable publicity to Plaintiff's private life, knowing Plaintiff was a minor, information

relating to the criminal complaint against Plaintiff was confidential, and that Defendant's postings would cause Plaintiff to suffer severe emotional distress and endangered the minor Plaintiff's safey. Further, Defendant's actions identifying Plaintiff by his name constituted a reckless disregard for Plaintiff's personal safety.

**WHEREFORE,** Plaintiff demands Five-Hundred-Thousand dollars ($500,000) in compensatory damages and Five-Hundred-Thousand dollars ($500,000) in punitive damages, plus attorneys' fees, expert fees, other reasonable costs and any relief the Court may deem equitable and just in light of the severe harm perpetrated upon Plaintiff by Defendants.

## COUNT IV

### INVASION OF PRIVACY--PLACING A PERSON IN FALSE LIGHT

83.    Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

84.    Defendants intentionally publicized over the Internet multiple defamatory blog posts falsely discussing the February 2012 incident at NBAC and the criminal complaint the Ecks filed against Plaintiff.

85.    Defendants intentionally attributed characteristics and conduct to Plaintiff that Defendants knew, or reasonably should have known, to be false. Defendants falsified the incidents that transpired between Plaintiff and M. Eck in February 2012, and Defendants continue to describe Plaintiff as a sexual predator, specifically alleging that Plaintiff digitally penetrated the anus of another swimmer despite that fact that this was false.

86.    Defendants intentionally wrote the blog posts with knowledge of their falsity or with a reckless disregard for the truth.

87.    Any reasonable person within the time and place of this conduct would find

Defendants' heinous actions fabricating a sensational story, whereby a minor is publically identified and accused of criminal sexual conduct, highly offensive.

88.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered and continues to suffer acute personal injury in the form of severe emotional distress from the knowledge that he was publically named as a sexual deviant and accused of committing heinous sexual acts.

89.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered and continues to suffer acute personal injury in the form of severe emotional distress from the knowledge his family, friends, and other members of his community have viewed these statements made by Defendants.

90.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered and continues to suffer acute personal injury in the form of severe emotional distress from the knowledge that the publication of this material, accusing Plaintiff of sexual assaulting another minor, could spur members of Plaintiff's community to seek to cause Plaintiff harm.

91.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered economic losses including (without limitation): diminished earning capacity and economic harms relating to public mistrust following these posts, and potential harm to Plaintiff's ability to pursue a collegiate education and loss of employment opportunity.

92.     Defendants' actions were motivated by actual malice as Defendants knew the information reported was entirely unsupported by concrete facts, and that Defendants were publically making numerous criminal accusations of an especially heinous nature against a minor. Further, Defendants' actions identifying Plaintiff by his name constitute a reckless disregard for Plaintiff's personal safety and have placed the minor Plaintiff in grave danger.

**WHEREFORE,** Plaintiff demands Five-Hundred-Thousand dollars ($500,000) in compensatory damages and Five-Hundred-Thousand dollars ($500,000) in punitive damages, plus attorneys' fees, expert fees, other reasonable costs and any relief the Court may deem equitable and just in light of the severe harm perpetrated upon Plaintiff by Defendants.

<u>COUNT V</u>

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

93.     Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

94.     Defendants intentionally posted false and defamatory material about Plaintiff on their Internet blog.

95.     Any reasonable person in a civilized community would find Defendants' conduct extreme and outrageous.

96.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge that he was publically named as a sexual deviant and accused of committing criminal sexual misconduct.

97.     As a direct and proximate cause of Defendants actions, Plaintiff suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge his family, friends, and other members of his community have viewed these statements made by Defendants.

98.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge that the publication of this material, accusing Plaintiff of sexual assaulting another

minor, could spur members of Plaintiff's community to seek to cause Plaintiff harm.

99.     As a direct and proximate cause of Defendants' actions, Plaintiff suffered economic losses including (without limitation): diminished earning capacity and economic harms relating to public mistrust following these posts, and potential harm to Plaintiff's ability to pursue a collegiate education and obtain employment.

100.    Defendants' actions were motivated by actual malice as they intentionally posted disparaging statements describing Plaintiff as a sexual and social deviant that Defendants knew, or reasonably should have known, to be false. Further, Defendants' actions identifying Plaintiff, a minor, by his name constituted a reckless disregard for Plaintiff's personal safety.

**WHEREFORE,** Plaintiff demands Five-Hundred-Thousand dollars ($500,000) in compensatory damages and Five-Hundred-Thousand dollars ($500,000) in punitive damages, plus attorneys' fees, expert fees, other reasonable costs and any relief the Court may deem equitable and just in light of the severe harm perpetrated upon Plaintiff by Defendants.

## COUNT VI

### VIOLATION OF 47 U.S.C.A. § 231 –

### RESTRICTION OF ACCESS BY MINORS TO MATERIALS COMMERCIALLY DISTRIBUTED BY MEANS OF WORLD WIDE WEB THAT ARE HARMFUL TO MINORS

101.    Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

102.    47 U.S.C.A § 231, entitled *Restriction of access by minors to materials commercially distributed by means of World Wide Web that are harmful to minors,* states:

(a) Requirement to restrict access
(1) Prohibited conduct
Whoever knowingly and with knowledge of the character of the material, in interstate or foreign commerce by means of the World Wide Web, makes any communication for

commercial purposes that is available to any minor and that includes any material that is harmful to minors shall be fined not more than $50,000, imprisoned not more than 6 months, or both.
(2) Intentional violations
In addition to the penalties under paragraph (1), whoever intentionally violates such paragraph shall be subject to a fine of not more than $50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.
(3) Civil penalty
In addition to the penalties under paragraphs (1) and (2), whoever violates paragraph (1) shall be subject to a civil penalty of not more than $50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.

103.    From December 2012 through the present, Defendants repeatedly, knowingly and intentionally with knowledge of the character of the material, placed in interstate or foreign commerce by means of the World Wide Web, multiple communications for commercial purposes that are available to any minor and that includes a variety of materials that are harmful to minors, including but not limited to such repeated, false, malicious, defamatory and graphically written descriptions like" anal digital penetration" "repeatedly jabbing fingers" in an "anus" by multiple minor persons.

104.    As defined by 47 U.S.C.A. § 231, the material that Defendants are creating, writing and distributing on Defendants' own website is "material that is harmful to minors" because it consists of a "communication, article, recording, writing, or other matter of any kind that is obscene or that—(A) the average person, applying contemporary community standards, would find, taking the material as a whole and with respect to minors, is designed to appeal to, or is designed to pander to, the prurient interest; (B) depicts, describes, or represents, in a manner patently offensive with respect to minors, an actual or simulated sexual act or sexual contact, an actual or simulated normal or perverted sexual act...; and (C) taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."

105.    As defined by 47 U.S.C.A. § 231, Plaintiff John Doe is a Minor.

106.    As defined by 47 U.S.C.A. § 231, Defendants Muchnick and Concussioninc.net are intentionally and knowingly distributing this "material that is harmful to minors" "by means of the World Wide Web" in a computer-based servicer file archive so that it is accessible over the Internet; Defendants are engaged in the business of doing so for commercial purposes, i.e., to sell publications from Concussioninc.net's "bookstore" and to link to Muchnick's publications for sale on Amazon.com.

107.    Defendants on their own website acknowledge awareness of the fact that Plaintiff John Doe is a minor.

108.    As required by 47 U.S.C.A § 231(d), Defendants have failed to obtain Minor John Doe or his parents' consent for Defendants' disclosure of such information.

109.    In accordance with 47 U.S.C.A § 231(a)(3), which provides for civil penalties, Defendants have violated 410 U.S.C.A. § 231(1), and accordingly *shall be subject to a civil penalty of not more than $50,000 for each violation.* For purposes of this paragraph, each day of violation shall constitute a separate violation.  Defendants violations have been ongoing since December of 2012.

**WHEREFORE,** Plaintiff demands civil penalty in accordance with 47 U.S.C.A. § 231(a)(3) of $50,000 per day per each violation on Defendants' website,  plus attorneys' fees, expert fees, other reasonable costs and any relief the Court may deem equitable and just in light of the severe harm perpetrated upon the minor Plaintiff by Defendants.

## COUNT VII

### VIOLATION OF 15 U.S.C.A. § 6501 *et seq* –

### CHILDREN'S ONLINE PRIVACY PROTECTION ACT

110.    Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs

as if fully set forth herein.

111.    15 U.S.C.A § 6501, referred to as the *Children's Online Privacy Protection Act,*
regulates unfair and deceptive acts and practices in connection with collection and use of
personal information from and about children on the Internet.

112.    In violation of that Act, Defendants have collected "personal information" about
Minor John Doe, including his first and last name, and a physical address where the minor can be
found most days of the week, 15 U.S.C.A. § 6501(8)(A) and (B), without consent or disclosure,
and Defendants are repeatedly distributing or disclosing that personal information about Minor
John Doe on the Internet and on defendants' website, accompanied by repeated, false, malicious,
defamatory and graphically written descriptions like" anal digital penetration" "repeatedly
jabbing fingers" in an "anus" by multiple minor persons.

**WHEREFORE,** Plaintiff demands civil penalty as this court sees fit to award per day
per each violation on Defendants' website,  plus attorneys' fees, expert fees, other reasonable
costs and any relief the Court may deem equitable and just in light of the severe harm perpetrated
upon the minor Plaintiff by Defendants.

## COUNT VIII

### VIOLATION OF 18 U.S.C.A. § 2261A – STALKING

113.    Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs
as if fully set forth herein.

114.    18 U.S.C.A § 2261A, entitled *Stalking,* provides in pertinent part: "Whoever—
uses any interactive computer service, or any facility of interstate or foreign commerce to engage
in a course of conduct that causes substantial emotional distress to that person or places that
person in reasonable fear of the death of, or serious bodily injury…shall be punished as provided

in section 2261(b) of this title.

115.    From December 2012 through the present, Defendants repeatedly have used an "interactive computer service…to engage in a course of conduct" that is causing Minor John Doe and his immediate family members substantial emotional distress.  Defendants are falsely, maliciously and defamatorily labeling Minor John Doe as a "sexual predator" a "sexual assailant" and a "child sex abuse[r]."  Defendants have done so repeatedly and continue to do so via an "interactive computer service."

116.    Defendants' course of conduct in so doing has caused the Minor Plaintiff substantial emotional distress and has placed Minor John Doe in reasonable fear of serious bodily injury because his identity, the location where he swims every day accompanied by the false allegations that he is a child sexual predator have been disclosed on the Internet repeatedly for millions to see.

**WHEREFORE,** Plaintiff demands Five-Hundred-Thousand dollars ($500,000) in compensatory damages and Five-Hundred-Thousand dollars ($500,000) in punitive damages, plus attorneys' fees, expert fees, other reasonable costs and any relief the Court may deem equitable and just in light of the severe harm perpetrated upon Plaintiff by Defendants.

## COUNT IX

### VIOLATION OF MD CODE, CRIMINAL LAW, § 3-805
### MISUSE OF ELECTRONIC MAIL

117.    Plaintiff re-alleges and incorporates herein by reference the foregoing paragraphs as if fully set forth herein.

118.    Over the course of five months, Defendants repeatedly transmitted information and communications through a computer and over the Internet which contained defamatory statements concerning Plaintiff, discussed a confidential criminal investigation of the Minor

Plaintiff, and sought to cause Plaintiff to receive public scorn, shaming and ridicule.

119.   It was Defendants' intent for these communications to harass and alarm Plaintiff, as they were presented in an accusatory manner with the purpose of shaming Plaintiff and creating buzz around the need to severely punish Plaintiffs for the acts Defendants alleged Plaintiff to have committed.

120.   Because Defendants knowingly published information charging Plaintiff with criminal activity which Defendants knew, or should have reasonably known, to be false, and because Defendants posted communications relating to a sealed criminal investigation of a minor, Defendants had constructive notice that their actions were illegal, and should cease.

121.   Defendants did not transmit this information for any legal purpose. Rather, these posts constituted illegal defamatory speech which invaded the privacy of an unsuspecting minor.

122.   As a direct and proximate cause of Defendants' harassment, Plaintiff suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge that he was publically named as a sexual deviant and accused of committing heinous sexual acts.

123.   As a direct and proximate cause of Defendants' harassment, Plaintiff suffered, and continues to suffer, acute personal injury in the form of severe emotional distress from the knowledge his family, friends, and other members of his community could view these statements made by Defendants.

124.   As a direct and proximate cause of Defendants' harassment, Plaintiff suffered, and continues, to suffer acute personal injury in the form of severe emotional distress from the knowledge that the publication of this material, accusing Plaintiff of sexual assaulting another minor, could spur members of Plaintiff's community to seek to cause Plaintiff harm.

**WHEREFORE,** Plaintiff demands Five-Hundred-Thousand dollars ($500,000) in compensatory damages and Five-Hundred-Thousand dollars ($500,000) in punitive damages, plus attorneys' fees, expert fees, other reasonable costs and any relief the Court may deem equitable and just in light of the severe harm perpetrated upon Plaintiff by Defendants.

Dated: May 10, 2013

Respectfully submitted,

ANNE T. McKENNA, Federal Bar No. 23270
ANDREW C. WHITE, Federal Bar No. 08821
SILVERMAN, THOMPSON SLUTKIN
& WHITE, LLC
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
Tel.: (410) 385-2225
Fax: (410) 547-2432
amckenna@silvermckenna.com
awhite@mdattorney.com

*Counsel for Plaintiff John Doe, a Minor*

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2013 a copy of Plaintiff's Complaint was served via electronic mail and first class mail to the following Defendants:

**IRVIN MUCHNIK**
1425 Martin Luther King Jr Way
Berkeley, California 94709

**CONCUSSION INC. a/k/a**
**Concussioninc.net**
P.O. Box 9629
Berkeley, California 94709
irvmuch@yahoo.com

ANNE T. McKENNA

## VERIFICATION

I, JAMES DOE, am the father of Plaintiff John Doe, a Minor.  I have read the foregoing Verified Complaint; and based upon my personal knowledge of the matters and events described therein, I know the allegations of fact in the Verified Complaint are true and accurate.

I hereby declare under the penalties of perjury that the foregoing is true and correct.

_____

JAMES DOE