IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND
(Northern Division)

JOHN DOE, A Minor                 *
By his Parents, JAMES and JANE DOE

                                     *

         Plaintiff,                *

v.                                  *

                                     *     Case No. _____

IRVIN MUCHNICK, et al.          *

         Defendants.             *

                                     *

*      *      *      *      *      *      *      *      *      *      *      *      *

### MEMORANDUM IN SUPPORT OF
### PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
### ORDER, PRELIMINARY INJUNCTION AND PROTECTIVE ORDER

Plaintiff John Doe, a Minor,[1] ("Minor John Doe") by his parents, Jane Doe and James

Doe, and through his attorneys, Anne T. McKenna, Andrew C. White, and the law firm,

Silverman, Thompson, Slutkin & White, LLC, respectfully submits this Memorandum in

Support of Plaintiff John Doe's Motion for Temporary Restraining Order, Preliminary Injunction

and Protective Order solely as to Counts I and II of Plaintiff's Complaint, and states as follows:

### INTRODUCTION

Minor John Doe resides in Carroll County, Maryland and attends a private, Catholic high

school in Baltimore County.  Minor John Doe is a member of the North Baltimore Aquatic Club

("NBAC"), a swim team that practices at the Meadowbrook Aquatic Center ("Meadowbrook") in

Baltimore City, Maryland.  Defendant Irvin Muchnick ("Muchnick") is a self-proclaimed

"foremost reporter and writer" who operates a tabloid-style website, www.concussioninc.net,

---

[1] A Motion for Leave to File Under Pseudonym and a Motion to File Under Seal are being filed simultaneously with this Motion for Temporary Restraining Order and Preliminary Injunction.

where Muchnick posts articles about individuals and events he targets in the greater sports community, including football and swimming.   To increase his SEO or search engine optimization[2] results, which drives web traffic to his website, generates profit and enables Muchnick to sell more of his self-published works, Muchnick writes dramatically-entitled posts wherein he frequently uses buzz words like "sexual assault" combined with the names of well-known schools, sports organizations and clubs, and individuals, including NBAC and the name of former NBAC swimmer, record Olympian and Baltimore-native, Michael Phelps.



---

[2] The goal of Search engine optimization (SEO) is to increase targeted Internet traffic by optimizing the website for search engines; this involves editing a website's content and code to increase its relevance to specific keywords and to remove barriers to the indexing activities of search engines.  http://docs.justia.com/cases/federal/district-courts/new-jersey/njdce/2:2009cv05465/234074/111/0.pdf?ts=1366808311; see also http://static.googleusercontent.com/external_content/untrusted_dlcp/www.google.com/en/us/webmasters/docs/search-engine-optimization-starter-guide.pdf  In sum, SEO refers to a process of increasing web traffic to one's website and thereby increasing profit through the use of key terms that are likely to drive a website's ranking when one searches a specific term via a search engine.  Thus, by using the term "Michael Phelps"—currently the most famous American swimmer—and "sexual assault" as frequently as possible, Muchnick drives up his website's order of ranking in search results supplied by search engines like Google.

This motion for temporary restraining order and preliminary injunction is being filed solely as to Counts I and II of the Complaint (Defamation and Invasion of Privacy—Intrusion Upon Seclusion, respectively) because Minor John Doe—a well-regarded Maryland youth with no criminal history whatsoever and an excellent record and reputation both in and out of school and in competitive sports—is being maliciously defamed by Muchnick, and because Minor John Doe's privacy is being unlawfully invaded and violated. Minor John Doe is suffering irreparable harm as a result of Muchnick's actions and statements.

The minor incident that Muchnick uses as a springboard for his malicious defamatory attacks and privacy violations—to increase his SEO results for his Internet-revenue generation/cyber-bullying website—is an inadvertent physical contact that occurred in February 2012 between Minor John Doe and another swimmer in the pool during NBAC swim practice at Meadowbrook. This contact occurred during a competitive swim team practice with multiple swimmers practicing in one lane while under the direct supervision of a coach. Although the alleged incident had been investigated, discussed and resolved between all parties, and the minors involved apologized and apologies were accepted, ten months after this incident, Muchnick falsely, maliciously and repeatedly began to publish defamatory statements that Minor John Doe is a "sexual predator," a "child sex abuse[r]," a "social deviant" and a "sexual assailant" who "digitally penetrated" and was repeatedly "jabbing fingers" in "the anus" of another swimmer.[3]

---

[3] As part of his efforts to increase his SEO results, Muchnick maliciously and/or recklessly correlates the February 2012 incident with an array of completely unassociated events, such as: the unrelated, tragic death of a minor swimmer at Meadowbrook in 2012; an incident from years ago when Michael Phelps was alleged to be "smoking a bong"; relationships between teenaged swimmers at Meadowbrook over 30 years ago; and in what would be an ironic comparison if the situation were not so serious, Muchnick repeatedly likens the incident to teen suicides across the nation from cyber-bullying.

Only after Muchnick began his online fictionalized characterization of the minor event surrounding three minor swimmers ten months beforehand, did one of the swimmer's families approach law enforcement about the incident. Muchnick's attacks are so vitriolic that Minor John Doe and his parents are gravely concerned how Muchnick will use cyber-bully website to mischaracterize this Motion and Complaint, and to further attack the Minor John Doe despite the Motion and Complaint being filed Under Pseudonym to protect the Minor Plaintiff from further harm. For this reason, Plaintiff seeks as part of his injunctive relief a protective order prohibiting Muchnick from posting or publicizing the fact and contents of this Motion and Complaint.

Muchnick's defamatory, false attacks on Minor John Doe are causing irreparable harm, psychological trauma, damage to reputation, loss of college acceptance potential, loss of employment opportunity among other damages. Moreover, Muchnick's attacks violate state and federal laws protecting the confidentiality of minors.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiff John Doe is now 17 years old; his parents Jane Doe and James Doe have been married for twenty years and have four Minor children. Minor John Doe is the eldest of the four children. (Ex. A, Affidavit of James Doe, ¶ 1-2.)[4] The Doe family resides in Carroll County, Maryland. (Ex. A, ¶ 2.)

Defendant Irvin Muchnick ("Muchnick") is a resident of California; his primary residence is 1425 Martin Luther King Jr Way, Berkeley, CA 94709. Muchnick uses a business address of Irvin Muchnick, P.O. Box 9629, Berkeley, CA 94709. At all relevant times, Muchnick was an employee, agent and/or representative of "Concussion Inc." as Concussion

---

[4] Exhibit is the Redacted Affidavit of James Doe, the Minor Plaintiff's father. An unredacted Affidavit has been filed with the Court under seal.

Inc.'s "author."[5]

Defendant Concussion Inc. operates via a website www.concussioninc.net, which is prominently labeled as being written by "author Irvin Muchnick."







Bookstore
About Irvin Muchnick
About Tim Joyce
What They're Saying
Irv in the media



About Irvin Muchnick

IRVIN MU(
concussic
CHRIS &
Suicide ar
published
York Time
other maj
interviewe
Factor an
Gross.

In 2007, I
Tales of L
his writing
thereafter,
Wrestling
WRESTL(
investigate
NANCY, ƒ
moved to
former chi

Irvin Muchnick

On the concussioninc.net website, Muchnick routinely publishes articles or make posts on a variety of subjects, and www.concussioninc.net is the Internet site on which all publications at issue in this Motion for a Temporary Restraining Order can be found.  The Defendant website www.concussioninc.net is registered through GoDaddy.com under the domain name, Concussioninc.net, and the Registrant is listed as Irvin Muchnick. (Ex. B.)  Concussioninc.net does not provide any physical address for the company's location, but the website domain hosting records list as "Technical Contact" the following:  Muchnick, Irvin, irvmuch@yahoo.com, P.O. Box 9629, Berkeley, California 94709, United States, 510-588-5405.

---

[5] http://concussioninc.net/?page_id=2

Although Defendant Concussion Inc. is represented to be an incorporated entity, none of the 50 states' various state departments of business/corporate records reveal incorporation of such a company. The primary tab or link on concussioninc.net is the "Concussion Inc. Bookstore"—this tab provides an online venue for sales of Muchnick's self-published works, including one .pdf publication entitled, *PENN STATE IN THE POOL: The Cover-Up of the USA Swimming Youth Coach Sex Scandal.*[6]



The website also contains links for viewers to purchase Muchnick's self-published works via Amazon.com.[7]   The concussioninc.net website also has a comment section and solicits comments from readers in the particular jurisdiction that each article is addressing.

## B.   <u>Background Facts</u>

Minor John Doe attended elementary school and middle school in Carroll County's public schools, and he has attended the same Catholic high school in Baltimore County since his freshman year, where he is currently a junior.   At no time in elementary, middle or high school has Minor John Doe ever been accused of or reprimanded for bullying classmates or other

---

[6] http://concussioninc.net/?page_id=5578;
[7] See, e.g., http://www.amazon.com/PENN-STATE-THE-POOL-ebook/dp/B007UK1BG0/ref=sr_1_1?s=digital-text&ie=UTF8&qid=1335459096&sr=1-1

students, nor was Minor John Doe's treatment of others ever called into question with the exception of the alleged incident discussed below. (Ex. A, ¶ 3-4.)

Minor John Doe has swum for NBAC for the last six years, since the age of eleven. (Ex. A., ¶ 5.)  NBAC is a member of USA Swimming, the national governing body for the sport of swimming in the United States, and Minor John Doe is a swimmer registered and insured with USA Swimming. (Ex. A., ¶ 5-6.)  NBAC's Head Coach and Chief Executive Officer is Bob Bowman ("Bowman"). Meadowbrook's general manager is John Cadigan ("Cadigan"). (Ex. A., ¶ 8.)  At no time in the six years during which Minor John Doe has swum on the NBAC team has any fellow team member, swimmer, parent or coach complained to any NBAC coach or to the Minor John Doe's parents about Minor John Doe's conduct or treatment of any other swimmer with the exception of the alleged incident discussed below. (Ex. A., ¶ 7.)

NBAC's swim team practices at Meadowbrook are conducted much like swim team practices across the country.  Because swimming pools have a limited number of lanes and swim teams typically are comprised of far more swimmers than swim lanes, multiple swimmers are required to swim in a line in the same swim lane as other swimmers during practice to ensure all swimmers have adequate swimming practice time. (Ex. A., ¶ 9-10.)

For swim practice purposes, swim team members at Meadowbrook and other pools are grouped with swimmers of the same ability, and such grouped swimmers often move at similar rates of speed.  This requires swimmers to move quickly through the lane and off the end of the pool wall at each turn to avoid striking other swimmers.  Swimmers are instructed by coaches to move off of the wall as immediately as possible to make way for the next swimmer; this is not just a matter of swimming etiquette, it is a matter of safety. (Ex. A., ¶ 11.)  Due to the number of swimmers in a lane, the proximity of swimmers in the swim lane, and the pace and movement of

multiple swimmers in one swim lane, unintended collisions and bodily contact commonly occur during competitive swim practices. (Ex. A., ¶ 12.)

Over the years, many swimmers have accidentally bumped or physically contacted Minor John Doe. Likewise, Minor John Doe inadvertently has bumped or physically contacted other swimmers in his many years of swim team practices. These are routine occurrences for all competitive swimmers, and have never given rise to a complaint by or against Minor John Doe with the exception of the February 2012 alleged incident. (Ex. A., ¶ 13.)

DeSales Kelly-Eck is the mother of M. Eck.[8] M. Eck is now a college freshman, but in February of 2012, M. Eck swam on the NBAC swim team together with Minor John Doe. (Ex. A., ¶ 14.) M. Eck was a senior in high school in February of 2012. Although two years apart in school, M. Eck swam for NBAC in the same practice ability level as Minor John Doe for three years. (Ex. A., ¶ 15-16.)

## C.   February 2012 Swim Practice

In February of 2012, DeSales Kelly-Eck mentioned that, one evening during swim practice at Meadowbrook, Minor John Doe had bumped her son M. Eck, and she stated another minor swimmer by the name of C. K.[9] had poked her son. She alleged this incident occurred when Minor John Doe, C. K., M. Eck, and multiple other male swimmers were swimming in the same practice lane under the supervision of a coach. (Ex. A., ¶ 17.) NBAC and Meadowbrook coaches and employees investigated the incident. Minor John Doe acknowledged that, in the course of making a turn, he accidentally bumped or contacted M. Eck, because M. Eck was stopped purposefully and was blocking the wall. At no time in February 2012 did any coach, any swimmer or DeSales Kelly-Eck state that Minor John Doe had engaged in any conduct of a

---

[8] Although M. Eck is now an adult over the age of 18 and college student, it is unclear to Plaintiff's counsel if M. Eck was 18 at the time of the alleged incident so he shall only identified by his first initial.
[9] Pursuant to Rule 5.2 of the FRCP, this minor swimmer is only being identified by his initials.

sexual nature towards M. Eck. (Ex. A., ¶ 18-19.)

On February 28, 2012, Cadigan met with Jane and James Doe and Minor John Doe. Immediately after that February 28, 2012 meeting with Cadigan, Minor John Doe wrote a letter of apology to M. Eck and his parents. (Ex. A., ¶ 20.)  On February 29, 2012, DeSales Kelly-Eck wrote an email to Cadigan expressing that the Eck family had read Minor John Doe and the other minor swimmer's notes of apology.  After extensive Bible quotations, DeSales Kelly-Eck advised Cadigan that M. Eck and their family had accepted the apology notes and wanted to move forward. The email, written within a week of the February 2012 alleged incident, makes no mention or accusation of sexual assault, child abuse or digital penetration. (Ex. C, email dated 2/29/12.)

On April 20, 2012, DeSales Kelly-Eck wrote an email to Cadigan wherein she expressed her gratitude to Cadigan for meeting with her; she asked for Cadigan's corned beef recipe; and she told him about her son M. Eck creating his own website where he expresses his political views.  DeSales Kelly-Eck closed the email with the line, "Wishing you and yours our family's warmest regards, DeSales."  Although only two months after the alleged incident, the email makes no mention or accusation of sexual assault, child abuse or digital penetration. (Ex. D, email dated 4/20/12.)

The Doe family heard nothing further about the February 2012 incident until Cadigan contacted them on December 22, 2012, and advised that NBAC had been contacted by Defendant Muchnick.  Cadigan stated that Muchnick had been blogging about the tragic death of a minor swimmer at Meadowbrook in 2012 and advised that Muchnick was going to blog about the alleged February 2012 incident on his website, www.concussioninc.net. (Ex. A., ¶ 23.)

In January of 2013—almost one year after the alleged incident—the Doe Family learned

that the Eck family had contacted Baltimore City Police. (Ex. A., ¶ 24.)   The Ecks did so one month after Defendant Muchnick's first December 2012 post that a "sexual assault" had occurred in February of 2012.   Sometime in the third week of January 2013, two Baltimore City Police Officers appeared unannounced at the Doe Family's residence in Carroll County, Maryland, on a weekday evening and advised that the Eck family had filed a Complaint against the other minor swimmer, C.K. and Minor John Doe.  (Ex. A., ¶ 25.)   The two Baltimore City Police Officers stated that the Eck family "was under a lot of pressure by outside influences." (Ex. A., ¶ 26.)

On or about February 21, 2013, Jane and James Doe received a letter from the Maryland Department of Juvenile Services (MD-DJS) dated 2/20/13, advising that their minor son John Doe had been referred to the MD-DJS for a Complaint. (Ex. A., ¶ 27.)   On March 8, 2013, MD-DJS sent Jane and James Doe a letter advising that MD-DJS the Complaint was being forwarded to the Office of the State's Attorney for Baltimore City for investigation. (Ex. A., ¶ 28.)

In March of 2013, Jane and James Doe were advised by their attorney, Craig Ward, Esq., that the Baltimore City State's Attorney's Office had investigated the matter and determined not to press charges against either minor swimmer.   No charges were ever filed by the Baltimore City State's Attorney, and no further action was taken by MD-DJS.  (Ex. A., ¶ 29.)

**D.    Content of Website Articles/Blog Posts**

The content of the website/blog posts are set forth below in chronological order. Since early 2012, NBAC and Meadowbrook in particular have been a SEO-results-oriented target of Muchnick's web posts as part of his larger, self-directed campaign against USA Swimming, USA Swimming Coaches and USA Olympics.  Muchnick describes USA Swimming as a story of sexual molestation, which he summarizes as such:

[E]ven many of the most serious students of feminism and the scourge that is sexual molestation do not fully appreciate how the swimming story — whose scale dwarfs that of Penn State — takes us to the white-hot center of this issue, at the nexus of sexual relations (an inevitable byproduct of human affairs) and abuse of power (which responsible people agree must be eradicated).[10]

Muchnick's initial posts about NBAC and Meadowbrook centered around the tragic drowning death of a minor swimmer at Meadowbrook in 2012 (Muchnick has repeatedly plastered the name of the deceased minor across his website and called upon the deceased minor's family to join him in gathering information against NBAC and Meadowbrook)[11] and a variety of other tawdry, SEO-result driven articles and allegations, [12] including Muchnick's

---

[10] Ex. E; http://concussioninc.net/?p=7375

[11] http://concussioninc.net/?page_id=15; See, e.g., Flashback to February: Concussion Inc.'s Exposure of the Tardy Incident Report on Lowenthal Death — Falsely Suggested Three Lifeguards Present, Published April 11th, 2013; EXCLUSIVE: Baltimore Pool's Report on Lowenthal Death Was Filed Late With Health Department and Seems to Claim Three Lifeguards Were Present, Published February 18th, 2013; Now It Can Be Told: Five Redacted Questions From Michael Phelps Swim Club's Half-Baked Maryland Health Department Report on Drowned Teenager Louis Lowenthal; published February 20th, 2013.
In an April 24, 2013 post, Muchnick called upon the deceased boy's family to aid him in his campaign for information against NBAC and Meadowbrook, http://concussioninc.net/?p=7392: "So there appear to be only two possible sources of further public information. One would be discovery in a wrongful-death civil lawsuit, should the family choose to file one."

[12] See, Ex. F;  http://concussioninc.net/?p=6459  which lists the following articles:
Dear USA Swimming Board of Directors: Here's Your Holiday Weekend Reading on Sex Abuse and Other Safety Issues at Michael Phelps' North Baltimore Aquatic Club
Michael Phelps' Coach Goes to Work for Consulting Company of Ex-USA Swimming President Dale Neuburger – Another One Who Has Problems With 'the Truth and Nothing But the Truth'
Published September 11th, 2012; 'Swimming Coach Accused of Molestation at Michael Phelps' North Baltimore Aquatic Club' — Tim Joyce, WBAL, Published October 3rd, 2012; Once More With Feeling: WBAL Reinstates Story on Sex Abuse at Michael Phelps' Swim Club — Reschedules Journalist Tim Joyce's Radio Interview Today Published October 4th, 2012; A Few Words About ID'ing Sex-Abusing Swimming Coaches Published October 4th, 2012; Michael Phelps' Coach, Bob Bowman, 'Cannot Comment' on Story of Sex Abuse at North Baltimore Aquatic Club. English Translation: The Story Is True. Published October 4th, 2012; Hearst Radio Embarrasses Itself, Pulls Entire Archive of Tim Joyce's Articles on USA Swimming Sex Abuse Scandals, Published October 5th, 2012; Baltimore Sun Takes a Swing at Story of Molestation of Girl Swimmers at Michael Phelps' Club — Hits a Ringing Foul Tip, Published October 6th, 2012; Swimmer-Blogger Tony Austin: USA Swimming Has a 'Rape and Escape' Loophole, Published October 6th, 2012; Swimming Hall of Famer Murray Stephens Is the Coach Who Left Michael Phelps' North Baltimore Aquatic Club Last Year Amidst Sex Abuse Allegation, Published October 8th, 2012; Did USA Swimming Lie About Telling Police the Allegations Against Coach Murray Stephens of Michael Phelps' North Baltimore Aquatic Club?, Published October 8th, 2012; NO LONGER CENSORED: Investigative Reporter Tim Joyce's Story on Sex Abuse Allegations at Michael Phelps' North Baltimore Aquatic Club, Published October 12th, 2012; USA Swimming Sex Abuse Scandal Flashback: Muchnick's Pre-Olympics Story — Killed by Yahoo Sports, Picked Up by MomsTeam, Published October 17th, 2012; EXCLUSIVE: Baltimore County Police Confirm 2010 Letter From USA Swimming Re Sex Abuse Allegation at Michael Phelps' North Baltimore Aquatic Club, Published October 22nd, 2012; Baltimore County Police Now Searching for USA Swimming's 2010 Letter About

bizarre focus on an alleged consensual relationship between two former teenaged Meadowbrook

swimmers from almost 30 years ago (in the 1980s).  (Ex. E).

In December 2012, Muchnick began adding to his website fictionalized accounts of the

February 2012 incident, which he identified as a "==sexual assault==" at Meadowbrook.



On December 21, 2012, Muchnick posted an article entitled, *Teen Was Sexually*

*==Assaulted by Teammates at Michael Phelps' North Baltimore Aquatic Club==; Coach Bowman*

*Criticized 'Moral Superiority' of Victim's Mother, Suggested Quitting Team.* (Ex. G,

http://concussioninc.net/?p=6454).  In that article, Muchnick describes in detail the nature of the

police investigation of the minors, and ==Muchnick claims he was given contents of the "entire==

Sex Abuse Allegation That Led to Departure of North Baltimore Aquatic Club's Hall of Fame Coach, Published October 22nd, 2012; Police Account of Processing of Sex Abuse Allegations at Michael Phelps' Baltimore Swim Club Is As Skimpy As a Speedo Bikini, Published October 23rd, 2012; Police Blocking Release of Referral to Crime Against Children Unit of North Baltimore Aquatic Club Coach Sex Abuse Allegation, Published October 24th, 2012; Rick Curl Arrest: Let's Connect the Swimming Sex Abuse Dots, From Washington to Baltimore ... And All the Way to Colorado Springs, Published October 26th, 2012; In North Baltimore Aquatic Club Sex Abuse Scenario, We Wait For More Documents and Victims to Emerge, Published October 26th, 2012; Michael Phelps' North Baltimore Aquatic Club Deals With New Challenge: 14-Year-Old's Death, Published November 3rd, 2012; Public Documents on North Baltimore Aquatic Club Sex Abuse Allegations Dangle in the Unhelpful Ozone, Published November 5th, 2012; Key Details Still Elusive Following Yesterday's Funeral of North Baltimore Aquatic Club Swimmer Louis Lowenthal (Which Michael Phelps and Bob Bowman Do Not Appear to Have Attended), Published November 7th, 2012; Anonymous Poster: Michael Phelps WAS at Lowenthal Memorial, Published November 9th, 2012; In Community Silence on Circumstances of Baltimore Swimmer's Death, Look to Pending Autopsy, Published November 14th, 2012; Tim Joyce Guest Column: The Search for the Truth About Sex Abuse at the North Baltimore Aquatic Club ... And the Search for Michael Phelps, Published December 14th, 2012;

file" from Maryland's "Child Protective Services."

Baltimore police, on referral from a Maryland social services agency, are investigating the sexual assault of a teenager by two teammates earlier this year during a practice session of Michael Phelps' North Baltimore Aquatic Club (NBAC) at the Meadowbrook Aquatic Center, ConcussionInc.net has learned.

Last week a former NBAC employee filed papers about the incident with state Child Protective Services. In addition, California swimmer-blogger Tony Austin — who, along with this reporter, was given copies of the file — forwarded email texts and other documents to Susan Woessner, the athlete protection officer of USA Swimming in Colorado, the sport's U.S. Olympic Committee-authorized national governing body…



CONCUSSION INC.
author Irvin Muchnick

Bookstore

Concussion Inc. Bookstore

Bookstore
About Irvin Muchnick

**Teen Was Sexually Assaulted by Teammates at Michael Phelps' North Baltimore Aquatic Club; Coach Bowman Criticized 'Moral Superiority' of Victim's Mother, Suggested Quitting Team**
Published December 21st, 2012, Uncategorized

Baltimore police, on referral from a Maryland social services agency, are investigating the sexual assault of a teenager by two teammates earlier this year during a practice session of Michael Phelps' North Baltimore Aquatic Club (NBAC) at the Meadowbrook Aquatic Center, ConcussionInc.net has learned.

Last week a former NBAC employee filed papers about the incident with state Child Protective Services. In addition, California swimmer-blogger Tony Austin — who, along with this reporter, was given copies of the file — forwarded email texts and other documents to Susan Woessner, the athlete protection officer of USA Swimming in Colorado, the sport's U.S. Olympic Committee-authorized national governing body.

In this first 12/21/12 article, Muchnick acknowledged that he should not identify Plaintiff John Doe by name because he was a minor.[13] But Muchnick claimed that Minor John Doe was an assailant who "repeatedly stuck fingers into the anus of a third teenage swimmer in a practice pool." (Exh H).

Later in the day on December 21, 2012, Muchnick posted another article this one entitled, *Dear USA Swimming Board of Directors: Here's Your Holiday Weekend Reading on Sex Abuse and Other Safety Issues at Michael Phelps' North Baltimore Aquatic Club*, in which Muchnick claimed that two teenagers sexually abused another teen at NBAC.

---

[13] The two teammates who were the focus of the teen's family's complaint to club officials are also teenage boys and, like the victim, are not being named in this article. (Ex. H).



On December 24, 2012, Muchnick published another article again discussing the actions and involvement of Maryland Child Services and Baltimore Police and revealed confidential records about minor NBAC swimmers including John Doe.  (Exh I).   On December 26, 2012, Muchnick posted an article claiming that the alleged February 2012 incident was one of "child sex abuse."



On December 30, 2012, Muchnick stated that "two elite swimmers" at NBAC "assaulted a teammate in February in the practice pool" and stated that "the assailants repeatedly jabbed fingers into his anus under water." (Ex. K).  On December 31, 2012, Muchnick again described a "sexual assault...by two teammates" and advised that Baltimore Police and "Maryland child

protective services" were involved. (Ex. L).

On February 7, 2013, Muchnick posted an article wherein he complained and informed readers, "[s]ources in the state's attorney's office say prosecutors are slow-walking their investigation of the February 2012 sexual assault by two teammates of another North Baltimore Aquatic Club swimmer." (Ex. M).

On February 12, 2013, Muchnick posted an article entitled, *SwimSwamSwum on North Baltimore Aquatic Club Sex Assault Story*, wherein he brags that his, "blog has characterized the incident as a sexual assault by two swimmers on a teammate in the practice pool at the Meadowbrook Aquatic Center, and published, among other details, the full texts of both the vague apologies of the assailants." (Ex. N).

On February 18, 2013, Muchnick published an article entitled, *After Assailant Swimmers Are Brought to Justice, Big Question Is Holding North Baltimore Aquatic Club Leaders Accountable for This Sick Environment.* (Ex. O).   In the 2/18/13 post, Muchnick describes the incident as "swimmer-on-swimmer sex assault" and informs readers that prosecutors are going to be charging the two minor alleged assailants, stating:

> Though I previously described prosecutors as "slow-walking" the investigation of the February 2012 sexual assault of a teen North Baltimore Aquatic Club swimmer by two teammates, sources there are offering a more encouraging prognosis. They say charges may be brought very soon.
> This first intervention of the justice system, however, would cover only part of making amends for this episode. I would even argue that punishment of the assailants, both of whom are juveniles, is the least important part. What will remain is holding accountable the leadership of the club — who allowed boys from families shelling out hundreds of dollars a month in dues, in the hope of turning them into world-class swimmers, to get away with escalating harassment … until the harassment turned sickening and, finally, criminal. (Ex. O).



**CONCUSSION INC.**
*author Irvin Muchnick*

**Concussion Inc. Bookstore**

Bookstore

**After Assailant Swimmers Are Brought to Justice, Big Question Is Holding North Baltimore Aquatic Club Leaders Accountable for This Sick Environment**
Published February 18th, 2013, Uncategorized

Though I previously described prosecutors as "slow-walking" the investigation of the February 2012 sexual assault of a teen North Baltimore Aquatic Club swimmer by two teammates, sources there are offering a more encouraging prognosis. They say charges may be brought very soon.

This first intervention of the justice system, however, would cover only part of making amends for this episode. I would even argue that punishment of the assailants, both of whom are juveniles, is the least important part. What will remain is holding accountable the leadership of the club — who allowed boys from families shelling out hundreds of dollars a month in dues, in the hope of turning them into world-class

On February 21, 2013, Muchnick posted an article again describing the February 2012 incident as "swimmer-on-swimmer sex assault" and states that it is the subject of an "open investigation" by Baltimore Police and the State's Attorney. (Ex. P).

On March 25, 2013, Muchnick published a letter from DeSales Kelly-Eck (whom he describes as the "the mother of the victim of the February 2012 sexual assault by two teammates") to USA Swimming employees wherein DeSales Kelly-Eck attaches an article about "rape"; she discusses nurturing an infant in her womb for nine months; she tells the employees that if they fail to establish a safe environment for swimmers then they share "the blame that Joe Paterno and…other coaches…shared"; she states that the "blood" of an Illinois teen who committed suicide "is quite literally on your hands"; and she describes Minor John Doe as a "sexual predator."[14] (Ex. Q).

Although it was clear to dozens of persons affiliated with NBAC and swimmers on the NBAC team that Muchnick's posts were directed against Minor John Doe and another minor swimmer, C.K., on March 25, 2013, Muchnick for the first time identified by name C.K., the other minor allegedly involved in the alleged incident (not the Minor Plaintiff in this case) in an article entitled, *North Baltimore Aquatic Club Juvenile Brags After State's Attorney Declines to Pursue Criminal Charges in Last Year's Pool Sex Assault.* (Ex. R). In this post, Muchnick

---

[14] John Doe is not identified by name in the letter from DeSales Kelly Eck, but from the information contained in the letter it is clear that she is identifying and referring to the Minor Plaintiff.

describes in detail the police investigation, the Juvenile Services Investigation and the

disposition by the Baltimore City's State's Attorney of the Eck's Complaints against the two

minor swimmers involved in the incident, stating:

> In January 2013 the [Eck] family filed a complaint with the Baltimore police sex crimes unit. The police referred the matter to the state's attorney.
>
> The family's hope was that the two assailants would be required to attend a victims' awareness class and perform community service. The state's attorney pursued a resolution on this basis. Prosecutors told the family that the filing of a delinquency petition with the Juvenile Court would have been complicated both by the criminal conviction burden of proof ("beyond a reasonable doubt," rather than "preponderance of the evidence") and by Maryland's one-year statute of limitations for such offenses.
>
> However, after [minor's name redacted] and the other assailant refused to meet with the Department of Juvenile Services for an informal disposition of the complaint, formal charges were dropped.

On April 18, 2013, Muchnick continued his barrage of malicious defamatory posts and

for the first time specifically identified Minor John Doe by name.    (Ex. S).



In this 4/18/13 post, Muchnick described the Minor Plaintiff and his fellow minor swimmer as the "two privileged brats that sexually assaulted a teammate." (Ex. S). Muchnick called Minor John Doe a "social deviant" and added in the Minor Plaintiff's parents to the mix, stating, "Now it is time to identify some of the other social deviants at NBAC — who, it must be emphasized, are probably just replicating behaviors enabled by their adult role models." "The [name of minor redacted]'s co-sex assault perpetrator was [Minor John Doe]." Muchnick described events at NBAC and the conduct of Minor Plaintiff John Doe as "the cell of hate and perversity we are following here in Baltimore."[15]

On April 22, 2013, Muchnick posted a long article covering a range of subjects, but in which he describes Minor John Doe as a "privileged prepp[y]" who committed an "unprosecuted sex assault…on a fellow teen swimmer in the practice pool." (Ex. T)

On April 23, 2013, Muchnick then published an article entitled, *Second Open Letter to Michael Phelps' Mom From the Mother of the Victim of the North Baltimore Aquatic Club Sex Assault*, in which he posted the contents of a lengthy letter presumably written by DeSales Kelly-Eck to Michael Phelps' Mother, wherein DeSales Kelly-Eck states, "I am the mother of the teenager who was bullied and harassed by his teammates at the North Baltimore Aquatic Club — culminating in sexual assault by two of his teammates." (Ex. U).



---

[15] Muchnick also likened the alleged February 2012 incident at Meadowbrook to the completely unrelated circumstances of a 15-year old girl in another State who apparently committed suicide after cell-phone photos of her being sexually assaulted while she was passed out were circulated on social media.

On April 24, 2013, Muchnick posted an article, *Minnesota Teen Pleads Guilty to Sexual Assault for Some of Same Things Two North Baltimore Aquatic Club Assailants Did* wherein he says that Minor John Doe is guilty of "digitally penetrating" M. Eck. (Ex. V).



Muchnick posted a second article on April 24, 2013, again identifying by name the minor who tragically drowned at Meadowbrook in 2012, and he called upon the deceased minor's family to join in his crusade against Meadowbrook to get information against Meadowbrook, stating, "So there appear to be only two possible sources of further public information. One would be discovery in a wrongful-death civil lawsuit, should the family choose to file one." (Ex. W). Muchnick goes on in that post to request assistance from anyone who can help mount a challenge to Maryland's laws regarding public information.

Defendants Muchnick and Concussion Inc. actively target their articles and posts at NBAC and Meadowbrook, both Maryland organizations, their employees and coaches, and at

minor Maryland citizens. The website actively solicits Maryland citizens to comment upon the stories and posts, buy Muchnick's publications, and respond by posting comments from Maryland residents whose children swim at Meadowbrook.



Bookstore
About Irvin Muchnick
About Tim Joyce
What They're Saying
Irv in the media
Irv's Supreme Court case and writers' rights work
Contact Irv
Archives



Irv on YouTube

Website designed by Saarachee

### Baltimore Health Department: Mark Your Calendars
Published April 17th, 2013, Uncategorized

"We have received your request, dated April 11, 2013," Baltimore Health Department chief public information officer Tiffany Thomas Smith just emailed, "and will respond in a timely fashion" to Concussion Inc.'s application for copies of Meadowbrook Aquatic Center public pool license applications. Irv Muchnick

### Baltimore Mayor Rawlings-Blake and Health Commissioner Barbot Join Doomed Game of Running Out Clock on Interest in Teen Swimmer Louis Lowenthal's Wrongful Death at Michael Phelps Swim Club
Published April 17th, 2013, Uncategorized

by Irvin Muchnick Baltimore's commissioner of health, Dr. Oxiris Barbot, has been as quiet as a mouse in the October 2012 lifeguard-free drowning death of 14-year-old Louis Lowenthal at the Meadowbrook Aquatic Center, home of Michael Phelps' North Baltimore Aquatic Club. "Yeah — a deaf and dumb mouse," as Curly of the Three Stooges once [...]

### 'Audrie Pott's Parents Ask For Classmates Who Saw Photo of Alleged Sexual Assault to Come Forward'
Published April 16th, 2013, Uncategorized

http://abcnews.go.com/US/audrie-potts-parents-classmates-photo-alleged-sexual-assault/story?id=18956803#.UW0EqbXvv2s

### Paging Baltimore's Health Commissioner, Dr. Oxiris Barbot, on Response to Louis Lowenthal Death and Public Information Request for Meadowbrook Aquatic Center's Public Pool License Applications
Published April 16th, 2013, Uncategorized

Commissioner Barbot: Please get back to me on the following questions, for a story that will be published around noon Eastern time Monday. 1. I have received no response regarding my Maryland Public Information Act request for Meadowbrook Aquatic Club public pool license applications (see last Thursday's email below). Please acknowledge receipt of my request [...]

Defendants Muchnick and Concussion Inc. actively seek to damage the lives of minor Maryland residents by maliciously influencing public opinion through grotesque, malicious, false, defamatory accusations of events at Meadowbrook, and through grotesque, malicious, false, and defamatory statements about the course and outcome of a confidential, sealed investigation of two minors—*the outcome of which, in point of fact, represents that the States' Attorney determined there was not a basis to proceed against the minors.*

E.    **Irreparable Harm Being Caused By Muchnick's Malicious Defamatory Statements and Invasion of a Minor's Privacy**

Minor John Doe has read the allegations and defamatory statements posted by Muchnick, and Minor John Doe is suffering severe emotional trauma from being accused of such crimes. (Ex. A., ¶ 32, 33.) Minor John Doe is being harassed and cyber-bullied by Defendants, and Minor John Doe and Jane and James Doe fear for Minor John Doe's safety. (Ex. A., ¶ 32, 33.) Furthermore, Jane and James Doe are worried that Minor John Doe may hurt himself because of the presence of these malicious, defamatory posts. (Ex. A., ¶ 32-33)

Minor John Doe and Jane and James Doe are traumatized with worry over who has read these posts, and how falsely being labeled as a sexual criminal will affect Minor John Doe for the rest of his life. (Ex. A., ¶ 34.)  Minor John Doe also fears he will not be able to get into college or get a job because he has been accused falsely of such heinous crimes on the Internet.  (Ex. A., ¶ 34.)  Minor John Doe's fears are not unwarranted.  Numerous individuals have approached Jane and James Doe and advised that they are aware of and have read the posts by Muchnick.  The Does have been informed by individuals that they knew Muchnick was specifically talking about the alleged incident involving their son and that Muchnick was accusing their son of being a "sexual assailant" even before Muchnick began identifying their son by name. (Ex. A., ¶ 35.) Minor John Doe's high school swim coach has contacted Jane and James Doe and advised that he has read the posts, and that he is now following Muchnick's posts. (Ex. A., ¶ 36.)

With each passing day, more and more individuals the Does know personally and more and more strangers are learning about Muchnick's posts. (Ex. A., ¶ 35.)

## JURISDICTION AND APPLICABLE LAW

A.    **Jurisdiction**

This Court has original jurisdiction in the above-captioned civil action pursuant to 28

U.S.C.A. § 1331,[16] because Count VI—47 U.S.C.A. § 231; Count VII—15 U.S.C.A. § 6501; and

Count VIII—18 U.S.C.A. § 2261A, all assert causes of action based the laws the United States

and, accordingly, present federal questions over which this court has original jurisdiction.

In addition, this Court has jurisdiction in the above-captioned civil action pursuant to 28

U.S.C.A. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the matter is

between citizens of different states.   Minor John Doe and his parents are citizens of the State of

Maryland.   Defendant Irvin Muchnick is a citizen of the state of California.   Defendant

Concussion Inc. d/b/a www.concussioninc.net is a website operated by Defendant Muchnick

with its principal place of business, registration and technical contact information associated with

P.O. Box in Berkeley, California.   The postal zip code assigned to the P.O. Box associated with

Defendant Concussion Inc. d/b/a www.concussioninc.net is the identical postal same zip code

associated with Defendant Muchnick's home address.

For purposes of determining diversity, corporations are deemed citizens of their state of

incorporation and their principal place of business.   28 U.S.C.A. § 1332(c)(1).   The term

"principal place of business" in the federal diversity jurisdiction statute refers to the place where

a corporation's officers direct, control, and coordinate the corporation's activities, in other words

the corporation's "nerve center."   Accordingly, Defendant Concussion Inc. d/b/a

www.concussioninc.net is deemed to be a citizen of the state of California.

This Court may exercise personal jurisdiction over the non-resident defendant because

(1) jurisdiction is authorized under Maryland's long-arm statute, MD Code Ann., Cts. & Jud.

Proc. § 6–103, and (2) the assertion of jurisdiction comports with constitutional due process.  *See,*

*Young Again Products, Inc. v. Acord*, 307 F.Supp.2d 713, 715 (2004), *citing, Christian Sci. Bd.*

---

[16] 28 U.S.C.A. §1331 provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

*of Dirs. of the First Church of Christ v. Nolan,* 259 F.3d 209, 215 (4th Cir.2001).

Maryland's long-arm statute specifically authorizes jurisdiction here.  The statute states in pertinent part:

> **In general**
> (a) If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.
> **Business transactions or injuries in State**
> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
> (1) Transacts any business or performs any character of work or service in the State;…
> (3) Causes tortious injury in the State by an act or omission in the State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

MD Code, Cts. & Jud. Proc., § 6-103.

Maryland's long-arm statute does not require that a defendant to have ever been physically present in the State, but rather permits exercise of personal jurisdiction where a defendant engages in "actions that culminate in purposeful activity within the State." *Young Again Products, Inc. v. Acord,* 307 F.Supp.2d 713, 716 (2004).  In this case, Defendants' contacts with the state and Defendants' conduct have caused tortious injury within the State. Defendants regularly, routinely and repetitively have attempted to influence the outcome of State juvenile proceedings; Defendants have engaged in a consistent course of conduct that calls upon Marylanders to provide Defendants with comments and calls upon Marylanders to assist Defendants to gain information; Defendants have targeted Maryland's health and safety practices, NBAC's health and safety practices; Defendants are attempting to sell Defendants' products to Marylanders; and Defendants maliciously and repetitively have targeted Maryland minors and publicized the names of minor Maryland citizens labeling them as criminals and

social deviants, particularly the minor plaintiff.

**B.**     **Applicable Law/Choice of Law**

In an action based upon diversity of citizenship, the relevant state law controls. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Ben-Joseph v. Mt. Airy Auto Transporters*, LLC, 529 F. Supp.2d 604, 606 (D. Md. 2008). With respect to choice of law, the district court applies the rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Accordingly, federal statutory and common law together with Maryland's statutory laws regarding protection of minors' names in investigations and court proceedings, and Maryland's common law govern in this case.

## STANDARD FOR PRELIMINARY INJUNCTION

This Court's determination of whether to grant a preliminary injunction or temporary restraining order is governed by Rule 65 of the Federal Rules of Civil Procedure. *Gen. Parts Distrib., LLC v. St. Clair*, Civ. A. No. 11-cv-3556, 2011 WL 6296746, at *1 (D. Md. Dec. 14, 2011) (holding that "[t]he standard for granting a [temporary restraining order] under Rule 65(b) is the same as for granting a preliminary injunction"). A preliminary injunction or temporary restraining order may be granted to protect the status quo and prevent irreparable harm. See *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003).

To obtain a temporary restraining order, a party must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *judgment vacated as moot by* 130 S. Ct. 2371 (2010), *standard aff'd on remand by* 607 F.3d 355 (4th Cir. 2010). Following *Winter*,

the Fourth Circuit requires that all four factors be shown and places the burden on the movant as to each. *Real Truth About Obama*, 575 F.3d at 345-46; Bernstein v. Maryland, 674 F. Supp.2d 703, 707 (D. Md. 2009).

## ARGUMENT

Minor John Doe moves for a temporary restraining order, a preliminary injunction and a protective order solely with respect to Counts I and II of Plaintiff's Complaint. Specifically , Minor John Doe moves to preclude Defendants' use and publication of Minor John Doe's name, to preclude descriptions of the alleged incident wherein the identity of Minor John Doe will be apparent to those reading the blog, and to redact all posts that identify Minor John Doe by name or by description. As set forth and established below, the temporary restraining order and preliminary injunction should be issued because (1) Minor John Doe is likely to succeed on the merits of his defamation and invasion of privacy—intrusion upon seclusion claims; (2) absent preliminary relief, Minor John Doe will suffer irreparable, permanent harm in the form of loss of reputation; psychological trauma; permanent labeling of Minor John Doe as a sexual predator; danger to Minor John Doe's health and safety; the possibility that Minor John Doe may hurt himself; loss of ability to gain college admission; and loss of job opportunity, *for which there is no remedy at law*; (3) the balance of equities tip decidedly in favor of Plaintiff John Doe because he is a minor, and he merely seeks to stop defamatory *per se* statements from being posted about him on the Internet; and (4) the injunction is in the public interest.

## A.    First Injunction Factor: Likelihood of Success on Merits

Plaintiff moves for injunctive relief solely with respect to the defamation and invasion of privacy counts of the Complaint. In order to obtain injunctive relief, Plaintiff John Doe must demonstrate that he is likely to succeed on the merits of the following claims:

**(1) Plaintiff Is Likely to Succeed on His Defamation Claim**

Minor John Doe must make a "clear showing that [he] is likely to succeed at trial on the merits." *Real Truth About Obama*, 575 F.3d at 351. In this case, Minor John Doe is likely to succeed on the merits of his defamation claim under Maryland law because Defendant Muchnick statements that Minor John Doe, a minor with no criminal history whatsoever, is a "rapist" a "sexual assailant" a "social deviant" a "child sex abuse[r]" and a "sexual predator" are defamatory *per se* under Maryland law.

The standard for evaluating defamation claims in Maryland is well-established. Under Maryland law, a defamatory statement is one that tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person. To establish a *prima facie* case of defamation when the plaintiff is not a public figure, the plaintiff must prove: (1) that the defendant made a defamatory communication to a third person; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. The "fault" element of the calculus may be based either on negligence or actual malice.[17]   *Haskins v. Bayliss*, 440 F.Supp.2d 455, 461 (D.Md. 2006); *Bouie v. Rugged Wearhouse, Inc.,* 2007 WL 430752 (D.Md. 2007), citing, *Shapiro v. Massengill,* 105 Md.App. 743, 772, 661 A.2d 202, 216-17 (1995).

Maryland law distinguishes between defamation *per se* and defamation *per quod*.   In the

---

[17] *Haskins v. Bayliss*, 440 F.Supp.2d 455, 461 (D.Md. 2006), citing, Maryland's Court of Special Appeals,

> As we explained in *Shapiro, 105 Md.App. 743, 661 A.2d 202,* actual malice "is established when the plaintiff shows, by clear and convincing evidence, that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity." On the other hand, negligence need only be shown by a preponderance of the evidence. *Samuels v. Tschechtelin, 135 Md.App. 483, 763 A.2d 209, 241-42 (2000)* (citations and quotation marks omitted).

case of words or conduct actionable as defamation *per se,* "the injurious character of the words is

a self-evident fact of common knowledge of which the court takes judicial notice and need not be

pleaded or proved." However, in the case of words or conduct actionable only as defamation *per*

*quod,* "the injurious effect must be established by allegations and proof of special damage;" thus,

in such cases the plaintiff must plead and show not only that the words or actions themselves

were defamatory, but it must be demonstrated that such words or conduct caused actual damage.

*Haskins v. Bayliss,* 440 F.Supp.2d 455, 461-462 (D.Md. 2006); *M & S Furniture Sales Co. v.*

*Edward J. DeBartolo Corp.,* 249 Md. 540, 241 A.2d 126, 128 (1968); *accord Metromedia, Inc.*

*v. Hillman,* 285 Md. 161, 400 A.2d 1117, 1119 (1979).

Under Maryland law, statements are defamatory *per se* when the statements possess

innately injurious characteristics. *Haskins v. Bayliss,* 440 F.Supp.2d 455, 461 (D.Md. 2006);

*Bouie v. Rugged Wearhouse, Inc.,* 2007 WL 430752 (D.Md. 2007); *Hearst Corp. v. Hughes,* 297

Md. 112, 125, 121 A.2d 466, 492 (1983). Accusing an individual of committing a crime is an

example of a statement that is defamatory *per se*. *See, e.g., Carter v. Aramark Sports and*

*Entertainment Services, Inc.,* 153 Md.App. 210, 238, 835 A.2d 262, 278 (2003)(allegation that a

person is a thief is defamatory *per se).* Whether an alleged defamatory statement is *per se or per*

*quod* is a question of law for the court. *See, e.g., Tschechtelin,* 763 A.2d at 244-45 (citations

omitted).

Muchnick and Concussion Inc.'s statements about Minor John Doe wherein Defendants

called Minor John Doe a "sexual predator" a "sexual assailant" and a "child sex abuse[r]" and a

"social deviant" among other statements are defamatory *per se. See, Carter v. Aramark Sports*

*and Entertainment Services, Inc.,* 153 Md.App. 210, 238, 835 A.2d 262, 278 (2003). As

evidenced by the attached exhibits of website posts, the statements—posted on the Internet—

were published to numerous third persons.  Defendants made these statements with knowledge of their falsity or with reckless disregard for the truth.  Minor John Doe has suffered and continues to suffer grave harm.  (Ex. A.)  Thus, the Defendants' speech constitutes defamation *per se* and injury is presumed.

**(2) Plaintiff Is Likely to Succeed on His Invasion of Privacy--Intrusion Upon Seclusion Count**

Special solicitude "for the privacy of a minor is a pervasive feature of American law. Confidentiality has long been a distinguishing feature of juvenile court records and proceedings." *Pena v. Schwartz*, 853 F. Supp. 164, 168 (D. Md. 1994).  "Whereas exposure of juvenile proceedings might encourage an offender to commit further acts of delinquency, lose employment opportunities, or otherwise suffer unnecessarily for youthful transgressions, confidentiality of the proceeding is believed to promote rehabilitative goals." *Id.* (*citing Davis v. Alaska,* 415 U.S. 308, 319, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974)).

The Supreme Court has recognized that where statutes protect personal records or files from public disclosure, such limitations are justified to protect against "clearly unwarranted invasion of personal privacy." *See, e.g. U.S. Dept. of State v. Washington Post Co.*, 456 U.S. 595, 598-599, 102 S.Ct. 1957 (1982).  In the case of Minor John Doe, Maryland's Rules and statutes provide clear and definite protection for confidentiality of the name and privacy rights of minor children, which Defendants have violated and frustrated the public policy behind such statutes.

Section 3-8A-27 of the Courts and Judicial Proceedings Article of the Maryland Code, entitled *Privacy of Records*, states in pertinent part:

**Police records concerning children**
(a)(1) A police record concerning a child is confidential and shall be maintained separate from those of adults.  Its contents may not be divulged, by subpoena or

28

otherwise, except by order of the court upon good cause shown or as otherwise provided in § 7-303 of the Education Article.[18]

**Court records or fingerprints of child**
(b)(1) A court record pertaining to a child is confidential and its contents may not be divulged, by subpoena or otherwise, except by order of the court upon good cause shown or as provided in §§ 7-303 and 22-309 of the Education Article.

In addition to Section 3-8A-27 of the Courts and Judicial Proceedings Article, Rule 11-121 of the Maryland Rules, entitled *Court Records—Confidentiality*, states in pertinent part:

> **a.  Sealing of Records.** Files and records of the court in juvenile proceedings, including the docket entries and indices, are confidential and shall not be open to inspection except by order of the court or as otherwise expressly provided by law. On termination of the court's juvenile jurisdiction, the files and records shall be sealed pursuant to Section 3-828 (c) of the Courts Article, and all index references shall be marked "sealed."…
> **b.  Unsealing of Records.** Sealed files and records of the court in juvenile proceedings may be unsealed and inspected only by order of the court.

Rule 5.2 of the Federal Rules of Civil Procedure, entitled *Privacy Protection for Filings made with the Court,* mirrors the Maryland's public policy in protection of minors' identities, requiring all filings made with the court that contain "the name of an individual known to be a minor" to be redacted to include only the last four digits of the minor's social security number, year of birth, and initials.  FRCP 5.2(d) further permits the Court to order that a filing be made

---

[18] None of the exceptions to this stringent prohibition in MD Code, Cts. & Jud. Proc., § 3-8A-27, are applicable to Defendants Muchnick and Concussion Inc.'s publication of John Doe's name:

(2) This subsection does not prohibit:
(i) Access to and confidential use of the record by the Department of Juvenile Services or in the investigation and prosecution of the child by any law enforcement agency;
(ii) A law enforcement agency of the State or of a political subdivision of the State, the Department of Juvenile Services, or the criminal justice information system from including in the law enforcement computer information system information about an outstanding juvenile court ordered writ of attachment, for the sole purpose of apprehending a child named in the writ; or
(iii) A law enforcement agency of the State or of a political subdivision of the State from releasing to the public photographs and identifying information of a child who has escaped from a detention center for juveniles or a secure residential facility for juveniles, for the purposes of facilitating apprehension of the child and ensuring public safety.

under seal.

As set forth above, Defendants Muchnick and Concussion Inc. have repeatedly and intentionally divulged the contents (that Muchnick has falsified or distorted), the findings (or lack of thereof), and the actions of Baltimore City Police, Maryland's Department of Juvenile Services, and Baltimore City State's Attorney's Office with respect to Minor John Doe.  The publication of this information violates the privacy afforded to juveniles by law in Maryland and the protection afforded minor's names; and it constitutes an intrusion upon Minor John Doe's seclusion.       Maryland   recognizes   four   forms   of   invasion   of   privacy   torts, including intrusion upon seclusion. *Gamble v. Fradkin & Weber, P.A.*, 846 F.Supp.2d 377, 383 (N.D. MD 2012); citing, *Household Fin. Corp. v. Bridge,* 252 Md. 531, 250 A.2d 878, 881–83 (1969). The "gist of the offense is the intrusion into a private place or the invasion of a private seclusion that the plaintiff has thrown about his person or affairs." *Gamble,* 846 F.Supp.2d at 383*, citing, Furman v. Sheppard,* 130 Md.App. 67, 744 A.2d 583, 585–86 (2000); *Pemberton v. Bethlehem  Steel  Corp.,* 66  Md.App.  133,  502  A.2d  1101,  1116  (1986) (citing Restatement (Second) of Torts § 652B).

The elements of the tort are an intentional intrusion upon another person's solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person. *Gamble,* 846 F.Supp.2d at 383*, citing, Trundle v. Homeside Lending, Inc.,* 162 F.Supp.2d 396, 401 (D.Md.2001). Intent is required; the tort cannot be committed by unintended conduct amounting only to a lack of due care. *Gamble,* 846 F.Supp.2d at 383*, citing, Bailer v. Erie Ins. Exch.,* 344 Md. 515, 687 A.2d 1375, 1381 (1997) (citing *Snakenberg v. Hartford Cas. Ins. Co.,* 299 S.C. 164, 383 S.E.2d 2, 4 (S.C.App.1989)).  An intrusion upon seclusion claim requires that the matter into which there was an intrusion is entitled to be private and is kept private by

the plaintiff. *Barnhart v. Paisano Publications, LLC*, 457 F.Supp.2d 590 (2006).

Not only did Minor John Doe keep this matter private, Maryland law entitles Plaintiff John Doe, as a Minor, to the privacy of his identification and records. Muchnick's repeated website identification of Minor John Doe by name, by the team he swims for which he swims, and by the pool where he swims almost every day, constitutes an intentional intrusion upon Minor John Doe's seclusion that violates Minor John Doe's statutory and common law right to privacy in his name and intrudes upon the seclusion afforded minors by Maryland law.   The repeated intrusion and identification is intentional, harassing, and recklessly endangers John Doe, a Minor.  (See Complaint filed contemporaneously herewith.)

**B.**    **Second Factor: Minor John Doe Will Suffer Irreparable Harm if Muchnick Is Not Enjoined**

Even following *Winter*, a showing of irreparable harm only "requires that plaintiffs seeking preliminary relief…demonstrate that injury is *likely* in the absence of an injunction." 129 S.Ct. at 375.   Courts have recognized that irreparable harm can occur from misrepresentations, disparaging comments, and defamatory statements when such statements could cause a plaintiff to suffer a permanent loss of reputation. *See e.g., Vecoplan LLC v. Ameri-Shred Corp.*, 335 F.Supp.2d 657 (M.D.N.C. 2004).

In *John Doe No. 1 v. Reed*, 130 S.Ct. 2811, 2825, 177 L.Ed.2d 493 (2010)[19] the Supreme Court affirmed a preliminary injunction prohibiting Washington State from making the names of individuals who signed a referendum available as a public record.  In the majority opinion, the Court specifically explains that part of its rationale is the legitimate concern that posting individuals' names on the Internet would cause individuals to "face threats, harassment, or

---

[19] In *John Doe No. 1 v. Reed*, 130 S.Ct. 2811, 2825, 177 L.Ed.2d 493 (2010), the Supreme Court rejected a First Amendment challenge to a preliminary injunction prohibiting Washington State from making the names of individuals who signed a referendum potential available as a public record.  The Supreme Court affirmed the injunction protecting the privacy of the individuals from having their name posted on the Internet.

reprisals," *John Doe No. 1*, 130 S.Ct. at 2821. And in his concurrence, Justice Alito notes that

placing individuals' names on the Internet is problematic because:

> If this information is posted on the **Internet**, then anyone with access to a computer could compile a wealth of information about all of those persons, including in many cases all of the following: the **names** of their spouses and neighbors, their telephone numbers, directions to their homes, pictures of their homes, information about their homes (such as size, type of construction, purchase price, and mortgage amount), information about any motor vehicles that they own, any court case in which they were parties, any information posted on a social networking site, and newspaper articles in which their **names** appeared (including such things as wedding announcements, obituaries, and articles in local papers about their **children's** school and athletic activities). The potential that such information could be used for harassment is vast.

*John Doe No. 1*, 130 S.Ct. at 2825.

Muchnick's posts identify Minor John Doe by name and by the pool where he swims

every single day.  Anyone with access to Muchnick's posts—which means anyone with a smart

phone or computer—can find out where Minor John Doe lives, goes to school, plays sports, his

Facebook page, etc., and harass Minor John Doe, seek out and cause Minor John Doe and his

family injury, and other grave potential harm.  The invasion of privacy is severe and endangers

the life of Minor John Doe.  Accordingly, failure to restrain and enjoin Muchnick from using

Minor John Doe's name and from posting defamatory statements would expose Minor John Doe

to irreparable harm.

Thus, absent preliminary relief, John Doe will suffer irreparable harm because he is a 17-

year old Maryland boy with no criminal history whatsoever that Muchnick and Concussion Inc.

are identifying to potentially millions and millions of Internet users as a sexual predator, a sexual

assailant, an individual who repeatedly digitally penetrated the anus of another swimmer—this is

done maliciously and/or recklessly in large part to drive up Muchnick's SEO results.  Unless all

references to Minor John Doe's name and identification are immediately removed, Minor John

Doe will continue to suffer extreme, permanent irreparable harm for which there is no remedy at law, including severe psychological harm, and being labeled forever as a sexual predator.  In addition, Minor Plaintiff John Doe is in the process of applying for admission to colleges, and with these defamatory statements about him on the Internet, Minor John Doe will be unable to obtain admission to college or to obtain a job.

Damages in the form of money alone will not be adequate.  James and Jane Doe are concerned that these false, malicious defamatory allegations will result in their minor son inflicting self-harm because he is repeatedly and publically being falsely attacked and falsely labeled a sexual predator, a sexual assailant, and a social deviant; these statements are causing him great distress.  (Ex. A, ¶ 33.) Minor John Doe and Jane and James Doe are also at risk of bodily harm because the posts are so inflammatory as to jeopardize Minor John Doe's safety.

**C.    Third Factor: the Balance of the Equities Tips in Favor of Issuance of Injunction to Protect Minor Plaintiff**

Preliminarily, as to the relative harms, it is critical to note that Minor John Doe does not seek an injunction to force Muchnick's website and all content contained therein down from the website, nor does Minor John Doe seek to stop Muchnick from selling his publications.  Minor John Doe seeks only to enjoin Muchnick's use of Minor John Doe's name, identification of Minor John Doe by other description, and the defamatory statements regarding Minor John Doe. "When the potential for harm to each party is weighed, a party 'can hardly claim to be harmed [where] it brought any and all difficulties occasioned by the issuance of an injunction upon itself.'" *Kos Pharm., Inc. v. Andrx Corp*, 369 F.3d 700, 728 (3rd Cir. 2004), *quoting, Opticians Ass'n v. Indep. Opticians*, 920 F.2d 187, 195 (3rd Cir. 1990).

Plaintiff John Doe is a minor who merely seeks to remove his name and the unsubstantiated allegations against him of felony criminal actions from the Internet.  Defendants

are posting the minor's name and the accusations of heinous sexual crimes repeatedly; and it is solely Defendants who have control over the content of their website publications.  There is no adverse harm to defendants in being required to remove these defamatory posts.  Thus, the balance of the equities tips decidedly in favor of Minor John Doe.

**D.     Fourth Factor: Plaintiff's Requested Injunction Is Strongly in the Public Interest**

The injunction is in the public interest because, as a matter of public policy, Maryland strongly protects the identity of minors' names by law.[20]  The injunction is further in the public interest because minor Maryland citizens should be protected from cyber-bullying of a defamatory nature, particularly where it is done maliciously and/or recklessly to increase Defendants' search engine optimization results and to inure to the financial benefit of the one who posts the content, Muchnick.

As set forth above, Defendants Muchnick and Concussion Inc. have repeatedly and intentionally divulged falsified contents, findings (or lack of thereof), actions and position of Baltimore City Police, Maryland's Department of Juvenile Services, and Baltimore City State's Attorney's Office with respect to the Minor Plaintiff, John Doe.  The publication of this information and the identity of Minor John Doe violate the privacy afforded to juveniles by law in Maryland; enjoining such conduct is strongly in the public interest.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Plaintiff requests that this Court grant this Motion and issue a Temporary Restraining Order *ex parte*, a Protective Order, and after a duly noted hearing, grant the Minor Plaintiff John Doe a Preliminary Injunction.

---

[20] Special solicitude "for the privacy of a minor is a pervasive feature of American law. Confidentiality has long been a distinguishing feature of juvenile court records and proceedings." *Pena v. Schwartz*, 853 F. Supp. 164, 168 (D. Md. 1994); MD Code, Cts. & Jud. Proc., § 3-8A-27; MD Rule 11-121; Rule 5.2 of FRCP.

Date: May 10, 2013

ANNE T. McKENNA, Federal Bar No. 23270
ANDREW C. WHITE, Federal Bar No. 08821
SILVERMAN, THOMPSON SLUTKIN
& WHITE, LLC
201 North Charles Street, Suite 2600
Baltimore, Maryland 21201
Tel.: (410) 385-2225
Fax: (410) 547-2432
amckenna@silvermckenna.com
awhite@mdattorney.com

Counsel for Plaintiff